## Wilson v. Commonwealth.

October 24, 1947.

W. R. Prater, Judge.

Williams & Allen, Leeburn Allen, E. E. Bach and D. Earl Miller for appellant.

Eldon S. Dummit, Attorney General, and Paris Swinford, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

An indictment returned by the grand jury of Wolfe County charged Estill Wilson and Ernest Banks with the murder of Virgil Wilson. On his separate trial Estill Wilson was found guilty of voluntary manslaughter, and his punishment fixed at imprisonment for a

term of ten years and one day. Reversal of the judgment is sought on one ground, viz., the evidence was insufficient to take the case to the jury and the trial court erred in overruling the accused's motion for a directed verdict of acquittal. It is argued that the testimony of the accused, corroborated by the only other eyewitness, shows that the killing was done in self-defense and since there was no evidence, either direct or circumstantial, contradicting such testimony it was the duty of the trial court to direct the acquittal of the accused.

The appellant, a single man, lived alone in a two-room house on Gilmore Creek in Wolfe County, about four or four and one-half miles from the home of the deceased. On Friday afternoon, October 11, 1946, Virgil Wilson went to appellant's home for the purpose of making a run of moonshine whisky. They worked at the still, which was located about 100 feet from the house, until 9 o'clock, when rain began falling and operation of the still was suspended. Virgil Wilson spent the night with appellant, and they finished making the whiskey on the following morning. About one gallon of whiskey was made. Ernest Banks arrived at appellant's home about 8 o'clock Saturday morning, and he, appellant, the deceased, and two or three others who called during the morning drank most of the newly made whiskey. About noon, with only the deceased, appellant and Banks present, the deceased and Banks began rolling dice on the floor. According to appellant and Banks, no money was involved. Nevertheless an argument arose, and as to what occurred at this point appellant testified as follows: "We was all talking and Banks and Virgil started shooting craps on the floor. They didn't have any money up—they was just rolling. Banks quit and they got into an argument. Virgil was cussing Banks, and they started arguing. I said: 'Stop that boys, I don't want no trouble in my house,' and then Virgil turned on me. He ran into the kitchen and got the butcher knife, and said: 'I'll cut your god damned guts out.' * * * I jumped past him into the kitchen and when I passed the radio—I always kept my twenty-two rifle there by the radio—I passed into the kitchen and grabbed my twenty-two rifle. I had no where else to go. The back door was locked, and I said: 'I'll shoot you if you come in here.' He said:

'You ain't got guts enough to shoot me.' When he stuck his head through the door, I shot him.''

Bank's testimony was substantially the same. The bullet entered Virgil Wilson's forehead above the right eye. Appellant and Banks testified that deceased fell on his back and never moved. Neither of them touched the body. Appellant locked the two outside doors, and he and Banks left the house taking with them the rifle and a shotgun. Appellant told two or three neighbors that he had killed Virgil Wilson, and about 5 p. m. several persons, including Dr. Kash Rose, went to appellant's home. They broke through a door to enter, and found Virgil Wilson's body on the floor with the feet three or four feet from the entrance to the kitchen. An ordinary table or case knife was lying on the floor, but no butcher knife was seen though appellant produced a butcher knife at the trial which he claimed was the knife with which the deceased attacked him. According to some of the witnesses, one of the deceased's legs was resting on an overturned chair. An empty teacup, which apparently had contained soup, was on the floor five or six inches from his left hand. Appellant testified that he prepared soup for lunch. Dr. Kash Rose probed the wound, and testified that the bullet entered just above the right eyebrow and ranged downward.

Appellant testified that he was 5 feet 7 inches tall, and the deceased was at least 6 feet tall.

The rule is that when an accused admits a homicide, the burden is on him to satisfy the jury that it was committed in self-defense. The rule was stated as follows in Foster v. Commonwealth, 301 Ky. 225, 191 S. W. 2d 220, 221: ''The law is well settled in this jurisdiction that, when an accused admits firing the shot that resulted in the death of his victim, and attempts to justify his conduct on the ground of self-defense, it is incumbent upon him to satisfy the jury that the homicide was excusable on that ground. Huff v. Commonwealth, 275 Ky. 578, 122 S. W. 2d 143; Turner v. Commonwealth, 287 Ky. 499, 153 S. W. 2d 927. That rule has been modified to this extent: While neither the Court nor the jury is required to accept defendant's explanation of homicide in the absence of eyewitnesses, nevertheless, if the physical facts in evidence corroborate the

testimony of the defendant, and the proven circumstances are more consistent with innocence than with guilt, it is the duty of the Court to instruct the jury to return a verdict of not guilty. Dixon v. Commonwealth, 290 Ky. 469, 161 S. W. 2d 913; Carpenter v. Commonwealth, 287 Ky. 819, 155 S. W. 2d 240.''

In Canter v. Commonwealth, 274 Ky. 508, 119 S. W. 2d 864, 870, it was said: ''Here there was proof, and admission by the appellant, that he fired the shots which took the life of deceased. The only question in such cases to be decided by the jury is whether or not the act of the accused is excusable, because committed in his defense. Admission by the accused that he killed Napier made it incumbent upon him to furnish proof that his act was excusable, under all the facts and circumstances. Whether or not he has so done is and has always been, under our repeated decisions in like cases, a matter peculiarly for the jury, Lickliter v. Com., 255 Ky. 471, 74 S. W. 2d 918, 922, unless defendant's proof uncontradictedly establishes his defense without the possibility of doubt. See Privitt v. Com., 271 Ky. 665, 113 S. W. 2d 49.'' To the same effect are Farris v. Commonwealth, 295 Ky. 324, 174 S. W. 2d 415, and Bigby v. Commonwealth, 273 Ky. 335, 116 S. W. 2d 659.

There are circumstances in the present case which cast considerable doubt on appellant's story which bears on its face the marks of improbability. There was proof that the bullet entered deceased's forehead and ranged downward, which indicates that the parties were not standing in the position described by appellant when the shot was fired. This fact, in connection with the position of the deceased's body, the overturned chair and the teacup, warrants the inference that the deceased was sitting and not standing when he was killed. In addition, there was proof which indicated a callous attitude on the part of appellant immediately after the homicide. The facts and circumstances were such as to present to the jury for consideration not only whether it was necessary to act but whether appellant used more force than was necessary to defend himself from the attack. A careful reading of the record convinces us that the court did not err in submitting the case to the jury.

Judgment is affirmed.