59 So.2d 38 (1952)
MIXON
v.
STATE.
Supreme Court of Florida, Division A.
April 1, 1952.
*39 J.M. McKinney, Cross City, Ben Lindsey and Declan O'Grady, Perry, for appellant.
Richard W. Ervin, Atty. Gen., and William A. O'Bryan, Asst. Atty. Gen., for appellee.
THOMAS, Justice.
The appellant and the man he later admitted killing had an altercation while the appellant was sitting in his jeep, the other man standing at the side of the vehicle. The appellant drove to his home nearby where he procured a revolver, while his adversary continued along the highway, afoot. The appellant, accompanied by his wife and their young daughter, then drove in the same direction until he overtook his former antagonist when both stopped.
From this point on, the versions of the state and the defendant differed materially.
According to the witnesses for the state, the pedestrian stepped back from the car, then put his hands forward, advanced, and projected the upper part of his body into the car just as the gun fired. A witness quoted appellant's wife as asking appellant immediately afterward: "My Lord, why did you shoot this boy?"
The defendant's version, given by the defendant, his small son who was with him at the first meeting, and his wife and young daughter who were present at the shooting is an entirely different story. On the first occasion the deceased cursed the appellant and brandished a knife. The appellant drove to his home nearby where he left the boy and armed himself with a pistol. Then, with his wife and young daughter, he went in search of a deputy sheriff, taking the road along which the deceased was walking toward a fish camp a short distance away, where the road terminated. When the car overhauled the deceased, he jumped into the jeep waving a large fish knife, and beat the appellant's head against the steering wheel, whereupon the appellant shot him. Both husband and wife categorically denied the statement attributed to the wife.
The jury doubtless believed, as well they might have from the defendant's actions and the direction he eventually took, that when the first difficulty ended and the men separated, he went to his home, armed himself and deliberately began a pursuit of the deceased, instead of a search for a deputy sheriff. Nothing in the testimony indicates that an officer would likely have been found at the fish camp a short distance away where the road ended. They also were justified in believing that the deceased was not himself armed and had approached the jeep only for the purpose of disarming appellant when the appellant stopped and drew his gun. They must have given credence to the testimony that no fish knife was ever discovered at the scene, and that the victim's pocket knife was found closed in a pocket of the trousers he wore next to his body. On the day of the homicide it was extremely cold, and he was wearing two pairs of pants.
So we believe that there was abundant proof to support a judgment of the defendant's guilt of unlawful homicide.
The only other question presented by the defendant challenges the judge's exclusion of testimony that the appellant was so weakened by heart disease that he could not adequately defend himself without use of his revolver.
Were we convinced that the final encounter was of such nature that the issue of self defense was properly introduced and the appellant's blame should therefore be judged by the amount of force he used in resisting his victim, we think the testimony would have been admissible. But the facts believed by the jury point too strongly to a deliberate pursuit by appellant, after the original difficulty had ended and the parties had separated. The law is quite clear that one may not provoke *40 a difficulty and having done so act under the necessity produced by the difficulty, then kill his adversary and justify the homicide under the plea of self defense.
We think that was the position the appellant got himself in and that this view was adopted by the jury when they found him guilty of the higher offense, murder in the second degree.
So, we conclude that the judge committed no error in rejecting the testimony relative to the appellant's physical condition. For the same reason we think the State should prevail on the cross appeal, taken under Sec. 924.07(4), by which is questioned the action of the court in reducing the offense to manslaughter.
The judgment is reversed with directions to enter one for murder in the second degree.
SEBRING, C.J., and TERRELL and HOBSON, JJ., concur.