**STATE of Maine**

v.

**Bruce R. MILLETT.**

Supreme Judicial Court of Maine.

Feb. 9, 1971.

Peter T. Dawson, Peter W. Culley, Asst. Attys. Gen., Augusta, for plaintiff.

Kinsey B. Fearon, Portland, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE and WERNICK, JJ.

WEBBER, Justice.

On appeal. The appellant was tried by a jury upon an indictment charging him with murder of one Frank Cooper and was convicted of manslaughter. During the trial the appellant became a witness in his own behalf. He admitted that he shot and killed Cooper with a ·revolver but asserted unsuccessfully that he killed in self-defense. It is not here contended that the evidence would not support a conviction for manslaughter if the claim of self-defense was properly rejected. We will deal with the issues in the order presented by the points of appeal.

"1. The Court erred in allowing. prejudicial testimony by relatives of the deceased in chambers prior to sentencing."

After verdict and before sentence the presiding Justice in chambers heard the views of a number of people, including the parents of the deceased, with respect to the character and conduct both of the appellant and of the victim of this homicide. A transcript of these conversations is made part of the record on appeal. The appellant signed a written waiver of any right he might have had to be present. His counsel was present and participated in the conversations. He was afforded the opportunity and did in fact present persons who furnished information in support of a plea for leniency. We can discover no violation of Due Process or any other constitutional right vouchsafed to the appellant. If the appellant believed that the sentence imposed was excessive, his proper remedy was to seek a review of sentence by the Appellate Division of the Supreme Judicial Court. He was informed that this right of appeal was available in open court.

"2. The Court erred in denying Defendant's requested instructions No. 2, 3, 4, 5, and 6."

In both written and oral argument, counsel for appellant has confined himself to requested instructions numbered 4 and 6 and we may treat the issues with respect to instructions numbered 2, 3, and 5 as waived. The decision to refrain from argument with respect to the latter instructions was no doubt prompted by the fact that the subject matter of those instructions was fully and accurately covered by the instructions actually given.

Requested instruction #4 dealt with the burden of proof with respect to self-defense. In effect the presiding Justice told the jury that if the defendant would justify or excuse an otherwise unlawful killing as committed in self-defense, he must carry the burden of proving that he acted in self-defense by the fair preponderance of the evidence. He stated additionally, however, that if upon the whole evidence the jury entertained a reasonable doubt as to whether or not the homicide was excusable, the jury should acquit. The appellant's requested instruction, although not a complete and adequate statement of the law, was obviously predicated upon the legal theory that once the self-defense issue has been properly tendered, the State must assume the burden of negativing self-defense beyond a reason-

able doubt. We treat the requested instruction as having the force of an objection to the instruction as given, thus raising the burden of proof issue.

We are aware that over the years the trial courts in Maine have treated self-defense as an affirmative defense to be proven by the defendant by evidence from whatever source by the fair preponderance of that evidence. It is noteworthy and indeed most remarkable that the precise issue has never heretofore been presented to or decided by the Law Court. It is perhaps because of an awareness that there has been no guiding decision on the point in this State and a further awareness that there is a conflict of authority in other jurisdictions, that the practice has grown up in our trial courts of giving the secondary or saving instruction given in this case requiring acquittal if upon the whole evidence the jury entertains a reasonable doubt as to guilt. Yet upon examination it is clear that the two instructions impose two different burdens with respect to self-defense which stand in conflict with each other.

Our research discloses that a small minority of appellate courts adhere to the rule that the defendant has the burden of proving self-defense by a fair preponderance of the evidence.[1] In Commonwealth v. Winebrenner [footnote (1)] the Pennsylvania Court stated its rationale for the fair preponderance rule. It viewed self-defense, unlike the defense of alibi, as a true affirmative defense in the nature of confession and avoidance. The defendant is seen as admitting facts which, absent excuse or justification, would constitute an unlawful homicide. He thereby assumes the burden of proving excuse and justification by the fair preponderance of the evidence. The Court added, however, "Nevertheless, the defendant's burden of proving self-defense by a fair preponderance of the evidence does not relieve the Commonwealth from proving, beyond a reasonable doubt, defendant's guilt of the crime charged." The possibility of confusion which may rise when a jury seeks to reconcile the burden thus placed on the State and the burden imposed upon the defendant is without doubt a factor which has prompted many courts to adopt a rule which imposes a less stringent burden upon the defendant. Without doubt the problem is at times one of semantics. In Gunther v. State (1962) 228 Md. 404, 179 A.2d 880, 883, after stating the rule that self-defense must be proved by a fair preponderance of the evidence and the State is not required to overcome the defense beyond a reasonable doubt, the Court continued, "It is thus apparent that the burden of proving self-defense *to the satisfaction of the jury* or the court (as the case may be) is on the defendant, but, it is likewise clear that if, upon all of the evidence, a reasonable doubt exists as to the guilt of the defendant, the trier of the facts ought to acquit him." (Emphasis ours) Here the Court seemingly equates proof "to the satisfaction of the jury" with proof by the fair preponderance of the evidence. Yet other courts understand proof "to the satisfaction of the jury" quite differently. In State v. Calloway (1968) 1 N.C.App. 150, 160 S.E.2d 501, 504, the Court reviewed North Carolina precedents and noted that the burden of proving self-defense "to the satisfaction of the jury," as required by the prevailing rule, meant something less than proof beyond a reasonable doubt and might mean something more than proof by a fair preponderance of the evidence. The Court said, "But the intensity of the proof required to 'satisfy the jury' of the truth of matters in mitigation or justification of

---

1. State v. Manns (1900) 48 W.Va. 480, 37 S.E. 613; State v. Dillard (1906) 59 W.Va. 197, 53 S.E. 117; Szalkai v. State (1917) 96 Ohio St. 36, 117 N.E. 12; State v. Ballou (1898) 20 R.I. 607, 40 A. 861; Commonwealth v. Winebrenner (1970) 438 Pa. 551, 265 A.2d 108; Long v. State (1968) 3 Md.App. 638, 240 A.2d 620; Chandler v. State (1969) 7 Md.App. 646, 256 A.2d 695. These cases illustrate the minority rule.

a homicide cannot be defined by the Court as being 'less than,' 'the same as,' or 'more than' the greater weight of the evidence or the preponderance of the evidence. * * * A bare preponderance of the evidence may be sufficient to satisfy the jury." In Kentucky the Court has held without more precisely defining the rule that "it is incumbent on accused to offer convincing proof that the act was excusable," and by such proof to "satisfy the jury." Smith v. Commonwealth (1940) 284 Ky. 80, 143 S.W.2d 859, 862; Wilson v. Commonwealth (1947) 305 Ky. 652, 205 S.W.2d 319, 320.

The majority rule, embraced by many courts, declines to shift the burden of proof to defendant but requires only that he assume the *burden of going forward with evidence* of such nature and quality as to raise the issue of self-defense and justify a reasonable doubt of guilt if upon the whole evidence the factfinder entertains such a doubt. The rule has been variously stated by those courts which have adopted it, and in some instances they have been aided by the wording or their judicial construction of applicable statutes.[2]

In State v. Yokum (1899) 11 S.D. 544, 79 N.W. 835 the Court had determined that self-defense must be established by the defendant by the fair preponderance of the evidence. But in State v. Wilcox (1925) 48 S.D. 289, 204 N.W. 369, Yokum was expressly overruled and the Court adopted what it deemed to be the "more humane and reasonable rule" that the defendant's evidence "must be sufficient to create or leave in the minds of the jury a reasonable doubt as to whether he was justified in taking the life of the deceased."

The Missouri Court carefully reviewed its prior decisions in State v. Malone (1931) 327 Mo. 1217, 39 S.W.2d 786 and concluded that no burden of proof as to self-defense could properly be imposed upon the defendant. The Court concluded that an instruction imposing a requirement that defendant not be acquitted on grounds of self-defense "unless he has shown to your reasonable satisfaction that he killed the deceased in lawful defense of himself" would be understood by the jury to mean that defendant had the burden of sustaining his defense by a preponderance of the evidence. The Court further concluded that error could not be averted by a concluding sentence "to the effect that if there is reasonable doubt of defendant's guilt he should be acquitted." Of the effect of the conflicting instructions, the Court said, "A lawyer might work out a construction to reconcile and harmonize that positive direction with the concluding sentence and the presumption of innocence to which defendant is entitled, but it is not likely a jury of laymen could do so. To say the best of it, the instruction was likely to be misunderstood by, and to mislead, the jury." The Court concluded that only the burden of coming forward with evidence rests upon the defendant and thereafter the State must sustain its burden of proving guilt beyond a reasonable doubt; and that all prior decisions tending to suggest a contrary rule "should no longer be followed." Malone was amplified and reaffirmed in State v. Strawther (1938) 342 Mo. 618, 116 S.W.2d 133.

We are satisfied that we should now adopt the majority rule. It has the virtue of relative simplicity and should

2. People v. Williams (1965) 56 Ill.App.2d 159, 205 N.E.2d 749; People v. Haynes (1970) 124 Ill.App.2d 91, 260 N.E.2d 377; State v. Chiarello (1961) 69 N.J.Super. 479, 174 A.2d 506, 519; Frank v. United States (1930) 9 Cir., 42 F.2d 623, 627; Roberson v. State (1913) 183 Ala. 43, 62 So. 837; Lee v. State (1931) Ala.App., 132 So. 61, 62. Spence v. Territory (1910) 13 Ariz. 20, 108 P. 227, 229; State v. Jarvi (1970) Or.App., 474 P.2d 363, 365; State v. Harrison (1970) 81 N.M. 623, 471 P.2d 193, 200; State v. Wilson (1944) 113 Vt. 524, 37 A.2d 400; State v. Barrett (1970) Vt., 266 A.2d 441; State v. Badgett (1969) Iowa, 167 N.W.2d 680; People v. Johnson (1968) 13 Mich.App. 69, 163 N.W.2d 688; State v. Holt (1968) Mo., 434 S.W.2d 576; Wharton's Criminal Evidence (12th Ed.) Vol. 1, Page 81, Sec. 27, and cases cited.

eliminate that apparent confusion which has arisen when trial courts have attempted to harmonize a burden of proof imposed upon the defendant with the continuing obligation of the State to prove guilt beyond a reasonable doubt. Since the claim of justification by self-defense is not raised by plea, it need not be anticipated by the State but will enter the case as an issue only if and when substantial evidence bearing on the issue is introduced, from whatever source that evidence may come. In that sense only can it be said that the defendant has a burden, the burden of coming forward with evidence of justification which will generate the issue and justify a finding by the factfinder, if indeed one is made, that by reason of the claimed justification a reasonable doubt exists as to defendant's guilt. As has frequently been stated, the defendant's burden under these circumstances is purely procedural and there is no occasion for instructions to the jury with respect to it. As was stated in State v. Strawther, supra at page 139, "Moreover, the giving of the instruction was unauthorized, even under the State's own construction of it, i. e., that it dealt only with the matter of the burden of evidence, as distinguished from the burden of proof. This because 'The shifting of the burden of evidence is governed by rules of procedure which are designed solely for the guidance of the court; with respect to their observance, operation, or effect, the jury has no function to perform.'" When such evidence is forthcoming the trial court must first, viewing that evidence in the light most favorable to the defendant, determine whether or not it is adequate to raise the self-defense issue, and, if believed, would under the legal tests applied to a claim of self-defense permit a reasonable doubt as to guilt, stemming from that claim, to arise. Having concluded as a matter of law that the self-defense issue is thus properly tendered, the trial court need only instruct the jury as to the elements of self-defense. He will have no occasion to speak of burden of proof other than to explain the State's burden of proving guilt beyond a reasonable doubt. If the evidence adduced, so viewed, is legally insufficient to raise the issue, the trial court will have no occasion or obligation to instruct the jury on the elements essential to a valid claim of self-defense, but rather will remove the issue of self-defense from jury consideration.

By adopting the foregoing rule, we neither intimate nor suggest any intended departure from the long established procedural requirements which apply when a defendant pleads not guilty by reason of mental illness or defect.[3] It is unnecessary here to discuss this issue. It suffices to say that there are factors which suggest sound policy reasons for requiring that this plea be sustained by proof by a fair preponderance of the evidence.

We turn now to a consideration of whether or not the giving of the instructions with respect to burden of proof in the instant case constituted reversible error prejudicial to the defendant in the light of the evidence. Did the evidence, viewed in the light most favorable to the defendant, generate the issue of self-defense for jury consideration? Was it when so viewed self-defeating in that it disclosed undisputed and uncontroverted circumstances under which the claim of self-defense cannot properly be made?

Although the defendant knew the deceased Cooper by sight and reputation, they had never met or engaged in any conversation prior to the day of the homicide. The defendant does not claim that Cooper had ever made any threats or sought a quarrel with him on any prior occasion. The defendant had loaned his truck to one Clark. Clark had become involved with Cooper in some sort of brawl in the course of which Clark was severely bruised about

---

3. State v. Lawrence (1870) 57 Me. 574; State v. Park (1963) 159 Me. 328, 333, 193 A.2d 1; State v. Hathaway (1965) 161 Me. 255, 211 A.2d 558; 15 M.R.S.A. Sec. 103.

the face and defendant's truck was slightly damaged. The window in the door of the truck could not be lowered or raised and there were bloodstains on the upholstery. Clark was willing to pay for the damage but felt that Cooper should pay his share. The defendant was told by several persons, and believed, that Cooper had a gun and "would use it." The defendant concluded that before he had a confrontation with Cooper to demand restitution, he should also have a gun. He and Clark purchased guns and ammunition and Clark tested both guns by firing out of the window of defendant's vehicle. The defendant and Clark then went in search of Cooper but were unable to find him. Clark then declined to proceed further. The defendant continued the search alone. He finally encountered Cooper at a barroom called the Stardust. Cooper was engaged in a telephone conversation. Cooper then disappeared into the kitchen accompanied by a waitress. The waitress returned alone and sat down with the defendant. The defendant testified, "She told me Cooper was in the kitchen and she told me he had his gun. And I told her it was all right, I had mine with me too." And on cross-examination, "I said, 'If he wants to fight me I will fight him. If he wants to use his gun I've got one, I can use it too.'" Cooper then emerged carrying a box containing his birthday cake. The defendant accosted him and said, "Cooper, I want to talk to you." Cooper asked him to wait a minute and went out the door. He then returned and told the defendant that his driver was waiting for him, that he would be at Joe and Nino's (another barroom) if the defendant wanted to see him. The defendant then proceeded to Joe and Nino's and awaited the arrival of Cooper. After Cooper arrived the defendant approached him and after some innocuous preliminaries "told him about the truck and everything about Harry Clark." Cooper re-

sponded, "* * * your damn truck." The defendant then told him that "if that's the way he felt about it, we would go outside and settle it." Cooper said he wasn't going outside. The defendant said, "What's the matter, are your scared?" The defendant says that Cooper then "pulled his gun and asked me if I was scared." The defendant says that Cooper advanced toward him, and that he was in fear for his life. The defendant then pulled out his own gun which he had stuck "in a rip inside (his) coat underneath (his) arm" and discharged several shots into Cooper's body. Cooper's weapon was not discharged.[4]

It has long been recognized that the claim of self-defense is not available to one who is himself the aggressor. A man has no right to provoke a quarrel and take advantage of it to justify the homicide. State v. Ballou (1898) 20 R.I. 607, 40 A. 861, 863. One may not invoke the defense of self-defense unless he is himself without fault. His fault in instigating the fatal combat precludes him from raising the defense. Cammack v. State (1970) Ind., 261 N.E.2d 862, 865. "* * * the defendant must not be the aggressor in provoking or continuing the difficulty involved." State v. Broten (1970) Iowa, 176 N.W.2d 827, 831; Commonwealth v. Roundtree (1970) 440 Pa. 199, 269 A.2d 709, 712. Self-defense is grounded on necessity and one cannot provoke a difficulty, thus creating the necessity, and then justify the resulting homicide as an act of necessity in self-defense. Mixon v. State (1952) Fla., 59 So. 2d 38; Hayes v. Wainwright (1969) D.C. Fla., 302 F.Supp. 716, 719; 40 Am.Jur.2d 433, Sec. 145. In State v. Mulkerrin (1915) 112 Me. 544, 546, 92 A. 785, 786 we recognized the same limitation on the right to claim self-defense when we said, "If on the other hand, * * * the defendant challenged the fight and provoked the de-

4. In evaluating the evidence in the light most favorable to the defendant, we disregard the testimony of eyewitnesses who said Cooper did not have a weapon in his hand. We also disregard the physical evidence that Cooper's weapon was found in a tray in the sink some distance from his body.

ceased to it, * * *, he cannot claim the benefit of this defense."

The applicable rules of law are well stated in the following texts:

"A defendant cannot avail himself of a necessity which he has wilfully created, as by provoking the combat in which it becomes necessary to kill to save his life. If the slayer provokes the combat or produces the occasion in order to have a pretext for killing his adversary or doing him great bodily harm, the killing will be murder, no matter to what extremity he may be reduced in the combat." Wharton's Criminal Law and Procedure, Vol. 1, Page 499, Sec. 228.

"But the defense of self-defense is lost where one intentionally provokes a difficulty in order to have a pretext to kill or injure another, even though it finally becomes necessary to kill in order to save his own life." Underhill's Criminal Evidence (5th Ed.) Vol. 3, Page 37, Sec. 661 (supp.).

We are satisfied that in a day of increasing resort to violence these are salutary rules indeed. The law of self-defense is designed to afford protection to one who is beset by an aggressor and confronted by a necessity not of his own making. It must not be so perverted as to justify a homicide which occurs in the course of a dispute provoked by the defendant at a time when he knows or ought reasonably to know that the encounter will result in mortal combat.

In the instant case the evidence bearing on self-defense and viewed in the light most favorable to the defendant fails to raise the issue for jury consideration. In effect, the evidence is self-defeating. The defendant entertained a grievance against Cooper of which Cooper was totally unaware. This grievance involved a claim for damages to property, trivial indeed when compared to value of a human life. Believing that Cooper owned a gun and "would use it," and obviously anticipating that Cooper would resist his demand for restitution, the defendant procured a gun for the sole purpose of going armed to the encounter he sought with Cooper. He then pursued Cooper from place to place until he was successful in producing the encounter he sought. When his demand was met by the anticipated rebuff, he instantly challenged Cooper to physical combat "outside" where they would "settle it." When Cooper, as the defendant had anticipated, produced a weapon, the defendant instantly seized upon the pretext afforded by the necessity he had created and killed Cooper. In short, the defendant, possessed of a damage claim which might well have been adjudicated in a small claims court, preferred to take the law into his own hands and seek redress upon the body of Cooper. Moreover, there is no suggestion or intimation that the defendant, at any time prior to inviting Cooper to "settle it" outside, could not have safely retreated. The Pennsylvania Court has wisely stated, "Life is sacred and if it is merely a question of whether one man should flee or another should die, then certainly the taking of life should be avoided and the person under attack should flee." Commonwealth v. Johnston (1970) 438 Pa. 485, 263 A.2d 376, 380. Our own rule applicable to retreat when retreat can safely be made requires no less. State v. Cox (1941) 138 Me. 151, 166, 23 A.2d 634. The law cannot give its sanction to the settling of disputes by the use of deadly weapons.

There is ample authority for the proposition, to which we have already adverted, that the trial court should not give instructions on the law of self-defense nor submit the issue for jury consideration unless and until there is substantial evidence, which, when viewed in the light most favorable to the defendant, would, if believed, permit the jury to entertain a reasonable doubt of guilt based upon a claim of self-defense. State v. Broten, supra; State v. Chiarello (1961) 69 N.J.Super. 479, 174 A.2d 506, 519. The duty thus imposed upon the trial court to first deter-

mine whether an issue has been generated for jury consideration, this being a question of law, is no different from that described in State v. Park (1963) 159 Me. 328, 333, 193 A.2d 1, 4. There the issue stemmed from the refusal of the trial court to instruct the jury on elements of manslaughter. We said, "Whether there was any evidence from which the jury could find provocation and other elements reducing the offense to manslaughter, was a question of law for the determination of the Court. The jury is the judge of the facts and must take the law from the Court. * * * In the absence of any evidence from which the jury could find manslaughter, the Court properly withdrew the issue from their consideration. There was no error in failing to give the requested instructions."

In the instant case the defendant gains nothing from the fact that an instruction, now and for the first time held to be erroneous, was given with relation to an issue not properly raised for jury consideration. When the jury was permitted to consider the claim of self-defense at all, the defendant was accorded more than he was entitled to on the evidence presented. Under these circumstances we treat the instruction with respect to burden of proof as mere harmless error in no way prejudicial to the defendant and in no sense ground for reversal of a conviction fully supported by the evidence.

In view of our conclusion that the defense of self-defense was not raised in this case, it becomes unnecessary to consider other points raised in connection with instructions thereon.

The entry will be

Appeal denied.

POMEROY, J., did not sit.

MARDEN, J., sat at argument but retired before the decision was rendered.