**STATE of Maine**

v.

**Robert M. THOMPSON.**

Supreme Judicial Court of Maine.

March 8, 1977.

Thomas A. Berry, Asst. Dist. Atty., Wiscasset, for plaintiff.

Westcott & Lynch, P. A. by Michael N. Westcott, Damariscotta, for defendant.

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY and GODFREY, JJ.

ARCHIBALD, Justice.

The defendant was convicted of assault and battery, high and aggravated.[1] 17 M. R.S.A. § 201. He has appealed on the grounds that the presiding Justice committed error (1) in instructing the jury on the meaning of high and aggravated assault and battery, and (2) in failing to instruct the jury on the right of a person to use force in defense of a third party.

We deny the appeal.

An extended discussion of the facts of this case is not warranted since our review of the record satisfies us that the testimony was sufficient to justify the jury in concluding, beyond a reasonable doubt, that the defendant committed the crime as alleged.

## THE INSTRUCTIONS ON ASSAULT AND BATTERY, HIGH AND AGGRAVATED

After the jury had deliberated for approximately two hours, it asked the Court for clarifying instructions "on the meaning of simple assault and battery as opposed to high and aggravated assault and battery." In response to this request, the presiding Justice made the following statement:

"[Y]ou are employing a subjective standard; you are making an evaluation of the community's reaction, if you will, to this act, whatever act you found was committed and in the circumstances of its commission—in terms of its threat to public order, in terms of its threat to the peace and security of the citizens, in terms of its threat to the peace and security of the individuals concerned and/or victims. These are the things that disturb public order, disquiet, fear, threats. All of these things have a bear-

ing, and this statute is calculated to take into account the basic nature of man to meet force with force . . . ."

The defendant made a timely objection to this portion of the Court's supplementary instructions and now asserts that the instruction implied the jury must consider, in its deliberations, what the community's reaction would be to its verdict. We disagree.

Immediately before giving the above quoted instruction, the Justice below told the jury:

"So again, what I'm trying to say to you is that it [i.e., whether an assault is aggravated] is addressed to your sound good common sense. Under all of the circumstances that you find existed in the case at bar, what was the character of this act in your good sound judgment?

You are members of the community; you come from different walks of life, from varied experiences, and how does it impress you, because granted, aggravation is a matter of a subjective standard.

The objective indicia of aggravation are so numerous and so varied, and the circumstances under which they can be enployed are so varied that we cannot lay down any fixed hard and fast formulation in the law. This is why it is left to the common sense and good judgment of the people of the community, of which you are a cross-section."

■ It thus becomes clear that the language objected to, when read in the context of the entire charge, does not support the defendant's argument.

The defendant also suggests that the presiding Justice's supplementary instruc-

---

1. "THE GRAND JURY CHARGES:

   On or about the thirteenth day of August, 1975, in the County of Lincoln, State of Maine, Robert M. Thompson did unlawfully assault Clifford Allen and did unlawfully batter and do violence to Clifford Allen by striking the head of said Clifford Allen with a socket wrench extension, so-called, causing injury to the said Clifford Allen, which assault and battery was of a high and aggravated nature."

**652**

tion contained an impermissible comment on the evidence in violation of 14 M.R.S.A. § 1105. The defendant's argument is premised on the fact that he was indicted for striking a police officer during a period of public disorder in the Town of Boothbay Harbor. The jury was instructed that it could consider, for the purpose of determining whether an assault and battery was high and aggravated in nature, whether the defendant's conduct "was a major affront to public order" or "an affront to the exercise of public authority." The defendant therefore maintains that the presiding Justice's references to "public order" and "public authority" unfairly emphasized the State's theory of the case.[2]

14 M.R.S.A. § 1105 provides:

"During a jury trial the presiding justice shall rule and charge the jury, orally or in writing, upon all matters of law arising in the case but shall not, during the trial, including the charge, express an opinion upon issues of fact arising in the case, and such an expression of opinion is sufficient cause for a new trial if either party aggrieved thereby and interested desires it, and the same shall be ordered accordingly by the law court on appeal in a civil or criminal case."

We do not agree with the defendant's contention that the language employed by the presiding Justice constituted an expression of opinion, on a factual issue. On the contrary, the supplementary instructions given by the Justice below correctly stated the law to the jury.

In *State v. Davenport*, 326 A.2d 1, 6 (Me.1974), we recognized that

"[t]he Legislature foresaw that a great variety of circumstances surrounding the offense could raise the simple assault and battery to one of grave and serious effect upon the victim as well as

have a major impact upon the peace, health, safety, good morals and general welfare of the public."

We have also indicated that a defendant's resistance to lawful authority may be considered by the jury in determining whether an assault and battery is high and aggravated. *See State v. Bey,* 161 Me. 23, 27, 206 A.2d 413, 416 (1965). *See also State v. Davenport,* 326 A.2d at 7; *State v. Smith,* 306 A.2d 5, 6 (Me.1973).

That the defendant was involved in a confrontation with the police during a period of public unrest was a factor which the jury was entitled to consider in deciding whether the defendant was guilty of the more serious offense of high and aggravated assault and battery. The jury had been clearly instructed that it was the sole trier of fact, and that the presiding Justice did not, and could not, have any opinion with respect to the factual contentions of the parties.

After a thorough review of the entire charge, we are satisfied that no error was committed.

## DEFENSE OF A THIRD PERSON

The defendant had seasonably submitted the following requested instruction, which was refused:

"You are instructed that if you find that Defendant, Robert M. Thompson, went to the defense of a friend, Gary Wylie, and if you find that at that time Gary Wylie was being illegally arrested and/or assaulted by persons unknown, and if you find that Defendant, Robert M. Thompson, used no more force than was necessary to stop the assault or arrest, then Robert M. Thompson was acting within his legal rights in coming to the defense of a third party, and as a result, you must find the Defendant, Rob-

---

2. The record is not clear whether defendant saved this point for appellate review under Rule 30(b), M.R.Crim.P. However, the State does not argue otherwise and we, therefore, resolve the confusion in favor of the defendant and treat the point as saved.

ert M. Thompson, not guilty of assault and battery."

Initially we must determine whether the defendant has complied with the provisions of Rule 30(b), M.R.Crim.P., which provides in pertinent part:

"No party shall assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. . . ."

After the charge was completed, the defendant once again requested that his proposed instructions be given, although he did not *specifically* object to the Court's failure to charge the jury as requested.

In *State v. Thibodeau*, 353 A.2d 595, 605 (Me.1976), we recently held that the mere submission of requested instructions is not sufficient compliance with the requirements of Rule 30(b), M.R.Crim.P. *See also United States v. DeCarlo*, 458 F. 2d 358, 370 (3rd Cir.), *cert. denied*, 409 U. S. 843, 93 S.Ct. 112, 34 L.Ed.2d 83 (1972); *Ryan v. United States*, 314 F.2d 306, 310 (10th Cir. 1963). *See generally*, Glassman, Maine Practice, § 30.4 at 234.

In *State v. Boisvert*, 236 A.2d 419, 422 (Me.1967), we stated that

"[t]he purpose for the rule [30(b)] is not simply to preserve the defendant's right to a *new* trial in case of erroneous instruction but also to make possible a correction in the judge's charge so that the jury may be properly instructed at *this* trial."

■ The presiding Justice was fully aware of the defendant's requested instruction, which was specifically brought to his attention twice before the jury retired, and had ample opportunity to decide whether the proposed instruction should be given. The defendant has complied with the underlying spirit of Rule 30(b) and has preserved his point for appellate review.

We now proceed to consider the claim that it was error to refuse to instruct the jury on the right of a person, in appropriate circumstances, to use reasonable force in defense of a third party. The record reveals that the Justice below was of the belief that a right to use force to protect another was not recognized in this state.[3]

■ We hold that the defendant was entitled to neither the specific instruction he requested, nor any instruction dealing with the third-person defense justification.

3. Historically, the right of a person to use force to protect another has been severely limited. In some cases the justification was reserved to those who were closely related, by affinity or consanguinity, to the third person. *See, e. g., United States v. Moore*, 332 F. Supp. 919, 920 (E.D.Va.1971). Where a stranger was permitted to use force to protect another, some jurisdictions have held that the justification was lost if, in retrospect, he was mistaken as to the necessity of employing such force. *See, e. g., People v. Booher*, 18 Cal. App.3d 331, 335, 95 Cal.Rptr. 857, 859 (1971).

Several jurisdictions, however, have eliminated many of the restrictions which were originally attached to the third-person defense justification. *See, e. g., United States v. Grimes*, 413 F.2d 1376, 1379 (7th Cir. 1969); *Commonwealth v. Martin*, 341 N.E. 2d 885, 891 (Mass.1976); *State v. Hornbuckle*, 265 N.C. 312, 144 S.E.2d 12, 14 (1965). The effect of these decisions has been to apply the legal principles governing

the use of force in self-defense to third-person defense situations.

With the enactment of 17-A M.R.S.A. § 108 (effective May 1, 1976), our Legislature has provided statutory recognition of the third-person justification. 17-A M.R.S.A. § 108 (1) provides in relevant part:

"A person is justified in using a reasonable degree of nondeadly force upon another person in order to defend himself or a 3rd person from what he reasonably believes to be the imminent use of unlawful, nondeadly force by such other person, and he may use a degree of such force which he reasonably believes to be necessary for such purpose."

It could be argued that a justification to use force in defense of a third person, corresponding to that recognized in 17-A M.R. S.A. § 108, existed in this state at the time the defendant committed this offense. Simply because the justification was not expressly recognized in our statutory or decisional law does not mean that it did not exist.

■ In order to be entitled to a requested instruction, the record must contain sufficient evidence to generate that issue for the jury's consideration. We have so held in numerous circumstances. *See, e. g., State v. Inman*, 350 A.2d 582, 586 (Me. 1976) (manslaughter instruction); *State v. Matheson*, 363 A.2d 716, 722 (Me.1976) (instructions on entrapment defense); *State v. Millett*, 273 A.2d 504, 510–11 (Me.1971) (instructions on self-defense); *State v. Park*, 159 Me. 328, 193 A.2d 1 (1963) (manslaughter instruction in a murder case).

Here, the defendant testified that he observed his friend being assaulted by *a* police officer. However, on cross-examination he admitted that the officer he eventually struck was not the same officer allegedly assaulting his friend.[4] The evidence offered by the defendant on the issue of third-person defense was "self-defeating." *See State v. Millett*, 273 A.2d at 510. The defendant's assertion that he used force to protect his friend from an illegal assault is inconsistent with his testimony at trial that he struck a police officer, against whom his friend needed no protection.[5]

We therefore conclude that the presiding Justice properly (albeit for the wrong reason) declined to instruct the jury on the third-person defense justification.

The entry is:

Appeal denied.

All Justices concurring.

---

4. "Q Why did you hit Cliff Allen if Cliff Allen wasn't involved with roughing you up?
A I do not recall seeing Clifford Allen. I did not go at Clifford Allen.

Q You didn't hit Clifford Allen?
A To my knowledge, I never even came close to Clifford Allen. He says I did; there are witnesses that say I did.
The officer that I jumped on had a helmet on, and when he turned, and I came down, I don't remember anything after the sticks on top of me ————."

5. Even if the jury believed that the defendant's actions were originally motivated by a desire to protect his friend from an unlawful assault, he would not be relieved under the Code from criminal liability since he did not use

"force upon another person in order to defend . . . a 3rd person from what he reasonably believe[d] to be the imminent use of unlawful, nondeadly force *by such other* person". (Emphasis supplied.)
17–A M.R.S.A. § 108(1) (effective May 1, 1976).