**STATE of Maine**

v.

**Robert Sutton O'BRIEN.**

Supreme Judicial Court of Maine.

Argued Jan. 14, 1981.

Decided July 30, 1981.

Wayne S. Moss (orally), Charles K. Leadbetter, Asst. Attys. Gen., Augusta, for plaintiff.

Gross, Minsky, Mogul & Singal, P. A., George Z. Singal (orally), Carl F. Rella, Bangor, for defendant.

Before McKUSICK, C. J., and WERNICK, NICHOLS, ROBERTS and CARTER, JJ.

NICHOLS, Justice.

The Defendant, Robert Sutton O'Brien, appeals from a judgment of conviction for manslaughter, 17–A M.R.S.A. § 203(1)(B) (Supp.1980),[1] entered on June 12, 1980, in Superior Court, Piscataquis County, pursuant to a jury verdict. Presented for our review are two issues addressing the denial of a motion for judgment of acquittal and the court's jury instructions on the issue of self-defense.

We affirm the judgment of conviction.

At trial the testimony of several witnesses disclosed that the Defendant lived in constant fear of the victim of the alleged manslaughter, Alton Gordon, setting fire to his house and farm buildings. This fear arose from the Defendant's knowledge of certain acts allegedly committed by Gordon in the vicinity of Monson. These acts included, among other things, Gordon's setting fire to a house in hopes of obtaining

---

1.  17–A M.R.S.A. § 203(1)(B) provides:
    1.  A person is guilty of manslaughter if he:

    .    .    .    .    .

    B. Causes the death of another human being under circumstances which would otherwise be murder except that the actor causes the death while under the influence of extreme anger or extreme fear brought about by adequate provocation.

insurance proceeds, poisoning a neighbor's well with diesel oil, putting an axe through the windshield of someone's automobile, and setting fire to a newly constructed camp. On one occasion Gordon called the Defendant at his place of employment, and concerned with the Defendant's wife becoming "chummy" with the State Police regarding these and other incidents, threatened to "shut Mrs. O'Brien's mouth" if he [the Defendant] did not shut it for him.

Several times a neighbor observed the Defendant walking around his farm buildings in the middle of the night, in expectancy of Gordon starting a fire. He kept fire extinguishers and as many as ten 5-gallon pails of water in his house to extinguish quickly any potential fires that Gordon might set. Due to this perpetual state of fear, and at the urging of a state police officer, the Defendant obtained a rifle to protect himself from Gordon, who was perceived by the officer to be a dangerous individual.

Against this background ensued the tragic events which gave rise to this trial and appeal.

On December 30, 1979, Alton Gordon visited the home of John Smith in Monson. Present were David Holmbom and Frank Stone who had just delivered a load of firewood to the Smith residence. While Smith, Holmbom, Stone and Gordon were conversing in the living room, the Defendant entered without knocking, carrying a loaded .32 calibre rifle. The Defendant's right hand was on the trigger of the cocked rifle.

At the moment the Defendant entered the Smith residence, Gordon was in a kneeling or crouching position, smoking a cigarette and leaning against the wall of the living room across from the Defendant. Gordon and the Defendant immediately began arguing. Gordon arose from his crouched position, took one step toward the

Defendant, and said, "Bob [O'Brien], I don't want any trouble with you." The Defendant then shot Gordon in his chest.

The cause of Gordon's death was determined by a medical examiner to be a gunshot wound to the chest with extensive hemorrhage.

### I.

For his first argument on appeal, the Defendant asserts that the presiding justice committed reversible error in denying his motions for judgment of acquittal on the charge of *murder*. Specifically, he claims that the State failed to rebut beyond a reasonable doubt evidence introduced by the defense to show that the homicide was precipitated by extreme fear brought about by adequate provocation. *See* 17-A M.R.S.A. § 203(1)(B). Consideration of the murder charge, argues the Defendant, constituted prejudicial error in that it could only have confused the jury on the one properly raised issue—namely, whether the Defendant was guilty of *manslaughter*.

The State, in response, contends that it was entitled as a matter of law to have the jury consider murder as a possible verdict, given the evidence of record, viewed in the light most favorable to the State, supporting such a charge.

We agree with the State's position.

■ Initially, we note that the Defendant's argument focuses, not upon the sufficiency of the evidence to support the manslaughter conviction, but upon the sufficiency of the evidence to withstand a motion for judgment of acquittal on the charge of murder.[2] The central question, therefore, for our determination is whether the State produced sufficient evidence to establish a *prima facie* case of murder, thus warranting submission of that charge for the jury's consideration.

---

2. Although the Defendant on appeal has chosen to concentrate upon the sufficiency of the evidence to support submission of the charge of murder for the jury's consideration, his motions below for judgment of acquittal also addressed the charge of manslaughter. In reviewing the record, we conclude there was sufficient credible evidence from which the jury could have found, and ultimately did find, the Defendant guilty of the crime of manslaughter.

In *State v. Wilcox*, Me., 387 A.2d 1124, 1126 (1978), we summarized the test to be applied at the trial level to a defendant's motion for judgment of acquittal:

> In deciding whether a judgment of acquittal should be entered on a defendant's motion pursuant to Rule 29(a), M.R. Cr.P., the trial justice must approach the evidence from a standpoint most favorable to the State, assume the truth of the evidence offered by the prosecution and determine from his review of the evidence in its totality whether there was relevant evidence from which the jury could have properly concluded that the accused was guilty beyond a reasonable doubt.

Our function at this stage of the proceedings is to ascertain on the record before us whether the presiding justice erred in ruling there was sufficient evidence from which the jury *could* have found the Defendant guilty of the charge of murder.

We conclude that he did not err in so ruling.

■ Considering all the evidence in the light most favorable to the State, as we are required to do,[3] and leaving all questions of witness credibility to the resolution of the fact finder,[4] the jury would have been justified in finding these facts beyond a reasonable doubt: The Defendant obtained possession of a rifle for the purpose of shooting Gordon if he trespassed on the Defendant's land. The Defendant was reported to have stated that if Gordon burned down his house, he would "get him." On the afternoon of the shooting, the Defendant walked unannounced into the Smith residence, and confronted Gordon with a loaded, cocked .32 calibre rifle. Gordon was unarmed and made no attempt to exert any force, deadly or otherwise, against the Defendant. When Gordon stood up from his crouching position and told the Defendant that he wanted no trouble, O'Brien shot him in the chest.

■ From these facts the jury could have concluded that the Defendant committed the homicide neither in self-defense nor under the influence of extreme fear brought about by adequate provocation,[5] but instead with the intent or knowledge of causing the death of Alton Gordon. The presiding justice committed no error in denying the Defendant's motions for judgment of acquittal specifically as to the charge of murder.

## II.

■ The Defendant also argues that the Superior Court's jury instructions pertaining to self-defense were phrased so as to create in the minds of the jurors the erroneous impression that the Defendant had the burden of proving affirmatively the issue of

---

3. *State v. Brewer*, Me., 413 A.2d 160, 160 (1980).

4. *State v. Doughty*, Me., 399 A.2d 1319, 1326 (1979).

5. The Defendant argues that because the State failed to rebut beyond a reasonable doubt evidence proffered for the purpose of showing that he acted "under the influence of ... extreme fear brought about by adequate provocation," he was entitled as a matter of law to a judgment of acquittal on the charge of murder. Although the Defendant is correct in observing that the admission of such evidence may serve, if believed by the fact finder, to lower a conviction which would otherwise be murder to the crime of manslaughter, the question of "extreme fear brought about by adequate provocation" is ultimately, as in this case, for the determination of the fact finder. 17–A M.R.S.A. § 203(2)(B) provides that "provocation is adequate if: ... [i]t is *reasonable* for the actor to react to the provocation with ...

extreme fear ...." (emphasis supplied) The ultimate test of reasonableness is objective; "there must be a 'reasonable' explanation or excuse for the actor's disturbance." *ALI Model Penal Code and Commentaries* § 210.3, at 50 (1980). As stated in the Comment to 17–A M.R.S.A. § 203, "Once a jury has found that the killing was under the influence of the mental factors described, there is sufficient warrant for them to find a lesser degree of criminal homicide." *See generally* Note, *Manslaughter and the Adequacy Provocation: The Reasonableness of the Reasonable Man*, 106 U.Pa.L. Rev. 1021 (1958).
In the instant case, although the jury concluded otherwise, it *could have found* that the Defendant's culpable mental state was not induced by "extreme fear brought about by adequate provocation." Accordingly, the presiding justice acted judiciously in submitting the charge of murder for the jury's consideration.

self-defense. It is firmly established in Maine that once the issue of self-defense is generated by the evidence, the burden rests upon the State to "disprove" its existence beyond a reasonable doubt. *State v. Lagasse*, Me., 410 A.2d 537, 542 (1980); 17-A M.R.S.A. § 5(2)(B) (Supp.1980).[6]

The State asserts, on the other hand, that the jury charge, considered in its entirety,[7] clearly informed the jurors that they could not convict the Defendant of either murder or manslaughter unless they concluded that the State had met its burden of proving the non-existence of self-defense, as well as all other elements of the crime, beyond a reasonable doubt.

■ Upon our review of the record, we conclude that the evidence, viewed in the light most favorable to the Defendant, failed to generate the issue of self-defense for jury consideration.[8]

■ For any defendant to be entitled to a particular instruction, there must be sufficient evidence of record to generate that issue for the jury's consideration. *State v. Thompson*, Me., 370 A.2d 650, 654 (1977). Addressing specifically the issue of self-defense, we stated in *State v. Millett*, Me., 273 A.2d 504, 510 (1971) that

> the trial court should not give instructions on the law of self-defense nor submit the issue for jury consideration unless and until there is substantial evidence, which, when viewed in the light most favorable to the defendant, would, if believed, permit the jury to entertain a reasonable doubt of guilt based upon a claim of self-defense.

*See also* 4 *Wharton's Criminal Procedure* § 547 (12th ed. 1976).

■ In the case at bar, the evidence failed to generate the issue of self-defense for jury consideration. The Defendant was the initial aggressor in the encounter with Alton Gordon and that aggressiveness did not have time to abate before the fatal shooting occurred. Consequently, the claim of self-defense was not available to him. One who is the aggressor may not avail himself of the defense of self-defense. *See e. g., State v. Millett, supra* at 509; *State v. Mulkerrin*, 112 Me. 544, 546, 92 A. 785, 786 (1915); *see generally* W. LaFave & A. Scott, *Handbook on Criminal Law* § 53, at 394–95 (1972). As we indicated in *Millett, supra* at 509, one may not invoke the claim of self-defense "unless he is himself without fault."

Therefore, we conclude the Defendant was not entitled to an instruction on self-defense, and accordingly, he was not prejudiced by the charge to the jury in the Superior Court.

The entry must be:

Appeal denied.

Judgment affirmed.

All concurring.

---

**6.** 17-A M.R.S.A. § 5(2)(B) provides:

> 2. The State is not required to negate any facts expressly designated as a "defense," or any exception, exclusion, or authorization which is set out in the statute defining the crime, . . .
> B. By proof at trial, unless the existence of the defense, exception, exclusion or authorization is in issue as a result of evidence admitted at the trial which is sufficient to raise a reasonable doubt on the issue, in which case the State must disprove its existence beyond a reasonable doubt.

**7.** *See, e. g., State v. Estes*, Me., 418 A.2d 1108, 1116 (1980); *State v. Foster*, Me., 405 A.2d 726, 730 (1979).

**8.** In light of our decision concerning this issue, we find it unnecessary to determine whether the Superior Court's jury instructions as to the question of self-defense constituted error. Even if we were to decide that these instructions were inadequate, such inadequacy would constitute no more than harmless error given the insufficient evidence to raise the issue in the first place. *See State v. Millett*, Me., 273 A.2d 504, 511 (1971). As in *Millett*, the jury's consideration of the claim of self-defense in the instant case afforded the Defendant more than he was entitled to on the evidence presented.