**STATE of Maine**

v.

**Reginald GILBERT.**

Supreme Judicial Court of Maine.

Argued March 12, 1984.

Decided April 3, 1984.

Caron, Ayotte & Caron, Ronald G. Caron (orally), Saco, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, WATHEN and GLASSMAN, JJ.

GLASSMAN, Justice.

The defendant, Reginald Gilbert, appeals from a judgment of conviction entered by the Superior Court, York County, in accordance with a jury verdict finding him guilty of criminal threatening with a dangerous weapon,[1] 17–A M.R.S.A. § 209 (1983), and possession of a firearm by one previously convicted of a crime punishable by one year

1. Criminal threatening is a Class D crime, which, when committed with use of a dangerous weapon, is enhanced to a Class C offense. See 17–A M.R.S.A. § 1252(4) (1983). The indictment charged the defendant with "criminal threatening with a firearm." A firearm is a dangerous weapon for purposes of section 1252(4). See 17–A M.R.S.A. § 2(9)(A) (1983).

or more incarceration, 15 M.R.S.A. § 393 (1980). Gilbert argues on appeal that the presiding justice erred by refusing to grant his motion for acquittal, and by refusing to instruct the jury on the permissibility of the use of deadly force in defense of a dwelling. Finding merit in neither of the defendant's contentions, we affirm the judgment below.

At trial, two very different versions of the events culminating in the indictment against Reginald Gilbert were presented. According to prosecution witnesses, on February 27, 1983, the defendant and one James Stanley transacted some unidentified business, as a result of which Stanley owed Gilbert $200. Because Stanley did not have the money on the 27th, the two men agreed Stanley would leave twenty-three silver coins with the defendant as collateral, and on the following day, Stanley would go to the defendant's residence sometime after noon, pay the $200, and recover the coins. On the afternoon of February 28th, Stanley proceeded to the defendant's home, and knocked on the door. Getting no response, Stanley asked the defendant's mother, who lived in the downstairs portion of the duplex in which Gilbert lived upstairs, to telephone Gilbert. Because Mrs. Gilbert's efforts to reach her son proved unfruitful, Stanley asked Mrs. Gilbert's permission to climb onto the back porch of her son's dwelling. Having obtained consent to do so, Stanley climbed onto Gilbert's porch and knocked two or three times. A minute or so later, Gilbert appeared, and from inside of the dwelling, ordered Stanley to depart or he would "blow him away." Gilbert carried and pointed at Stanley a .357 Magnum, but did not fire.

The defendant's version of the events of February 28th differed drastically. The defendant denied any business involvement with Stanley on February 27th, denied receiving silver coins as collateral, denied be-

ing owed money by Stanley, and denied inviting Stanley to his premises on the 28th. According to Gilbert, he lived with his parents at 57 Pool Street, the downstairs duplex, and rented the upstairs. On February 28th, he was awakened by his mother and was told the upstairs tenant was having trouble. Proceeding upstairs, the defendant observed the tenant holding a gun and shaking. The tenant told Gilbert that someone was trying to break in. Gilbert grabbed the gun to prevent the tenant from injuring himself, approached the back porch, and noticed James Stanley pounding on the outside of the porch door. The defendant, wishing to protect the premises and fearful for his safety because of Stanley's reputation for violence,[2] told Stanley he would "blow him away" if he came through the door.

A. The denial of the motion for acquittal

■ Maine Rule of Criminal Procedure 29(a) (1983) provides, in pertinent part:

> The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses.

The test of legal insufficiency under Rule 29 is whether "on the evidence as a whole, assessed most favorably to the State, a jury acting rationally could not avoid having a reasonable doubt as to the defendant's guilt." *State v. Howes*, 432 A.2d 419, 424 (Me.1981); *see also State v. Brown*, 410 A.2d 1033, 1034 (Me.1980).

■ Resolving the conflicting testimony in the instant case in a light most favorable to the State, it is clear the trial court's denial of the defendant's motions to acquit was entirely proper.[3] The jury could rea-

---

**2.** The defense elicited testimony from three individuals concerning Stanley's reputation in the community for violence.

**3.** The defendant moved for a judgment of acquittal at three stages of the proceedings: after the close of the State's case, after the close of all the evidence, and within ten days after discharge of the jury.

sonably have found Stanley was invited to and expected at Gilbert's residence on February 28, 1983, and therefore, was neither a trespasser nor reasonably perceived as such by Gilbert. *See* 17-A M.R.S.A. § 402(1)(A) (1983) (person is guilty of criminal trespass if knowing he is not privileged or licensed to do so he enters a dwelling place). Because Stanley was not reasonably perceived as a trespasser, Gilbert had no right to use force to defend the premises. *See* 17-A M.R.S.A. § 104(1) (right to use nondeadly force in defense of premises contingent upon reasonable belief that criminal trespass is or is about to occur). Further, because Gilbert invited Stanley to his premises on the 28th, the jury could reasonably have found Gilbert did not have a reasonable belief Stanley was about to use imminent unlawful force upon him. Therefore, Gilbert had no right to use force in defense of his person. *See* 17-A M.R.S.A. § 108(1) (1983) (to justify use of force in defense of person, actor must reasonably believe imminent unlawful force is about to be used on him).

 Additionally, there is clearly sufficient evidence in the record to support the jury's finding that the defendant had violated 15 M.R.S.A. § 393 (1980)—possession of a firearm by a felon. Counsel stipulated that in 1981 the defendant had been convicted of a crime punishable by one year or more imprisonment, and there was clear evidence the defendant knowingly had in his possession or control an operable firearm. In order to find a violation of section 393, a jury must find that a person previously convicted of a crime punishable by one year or more imprisonment owned, possessed, or controlled a firearm, without a permit to so do. *See* 15 M.R.S.A. § 393(1).

**B.** The trial court's refusal to instruct the jury on the permissibility of the use of deadly force in the defense of premises.

During the course of the trial, counsel stipulated that the force used by Gilbert was nondeadly. This stipulation was a recognition of the principle enunciated in *State v. Williams*, 433 A.2d 765 (Me.1981), in which we held that "deadly force" as used in the Maine criminal code does not include the threatened use of deadly force. *Id.* at 769–70.

Despite the fact that he did not employ deadly force, Gilbert argues the presiding justice should have instructed the jury of his right under 17-A M.R.S.A. § 104(3) to use deadly force in defense of his premises.[4] The defendant reasons that the jury could not have effectively evaluated the reasonableness of his nondeadly use of the firearm unless it was aware that the use of deadly force is permissible in certain circumstances.

 The defendant's argument is without merit. The presiding justice gave a fair charge to the jury which included extensive instructions on the justification for the use of nondeadly force. There is no testimony or suggestion in the record that deadly force was used or attempted. In the absence of such evidence, the issue upon which the defendant sought an instruction to the jury simply was not generated. As we stated in *State v. O'Brien*, 434 A.2d 9 (Me.1981), "For any defendant

---

**4.** 17-A M.R.S.A. §§ 104(3) & (4) (1983) provides, in pertinent part:

3. A person in possession or control of a dwelling place or a person who is licensed or privileged to be therein is justified in using deadly force upon another:

. . . .

B. When he reasonably believes that deadly force is necessary to prevent or terminate the commission of a criminal trespass by such other person, who he reasonably believes:

(1) Has entered or is attempting to enter the dwelling place or has surreptitiously re-

mained within the dwelling place without a license or privilege to do so; and

(2) Is committing or is likely to commit some other crime within the dwelling place.

4. A person may use deadly force under subsection 3, paragraph B, only if he first demands the person against whom such deadly force is to be used to terminate the criminal trespass and the other person fails to immediately comply with the d mand, unless he reasonably believes that it would be dangerous to himself or another to make the demand.

to be entitled to a particular instruction, there must be sufficient evidence of record to generate that issue for the jury's consideration." *Id.* at 13; *see also State v. Thompson,* 370 A.2d 650, 654 (Me.1977) (third person defense); *State v. Millett,* 273 A.2d 504, 510–11 (Me.1971) (self-defense). An instruction on an issue not generated by the evidence would serve only to confuse and mislead the jury. The jury, to the defendant's prejudice, might have believed it could, on the evidence before it, find the defendant had used deadly force. The presiding justice's refusal to give the requested instruction was entirely proper. *Cf. State v. Williams,* 433 A.2d at 770–71.

The entry is:

Judgment affirmed.

All concurring.