STATE of Maine

v.

Clinton JACKSON, Jr.

Supreme Judicial Court of Maine.

Argued March 10, 1987.

Decided April 28, 1987.

James E. Tierney, Atty. Gen., Wayne S. Moss, Rae Ann French (orally), Asst. Attys. Gen., Augusta, for the State.

Michael E. Saucier (orally), Hunt, Thompson & Bowie, Portland, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, SCOLNIK and CLIFFORD, JJ.

McKUSICK, Chief Justice.

In this welfare fraud case the Superior Court (Cumberland County) after a jury trial convicted defendant Clinton Jackson, Jr., of two counts of theft by deception (Class C), 17–A M.R.S.A. § 354 (1983),[1] and two counts of unsworn falsification (Class

---

1. So far as here relevant, 17–A M.R.S.A. § 354 (1983) provides:

    1. A person is guilty of theft if he obtains or exercises control over property of another as a result of deception and with an intention to deprive him thereof.

    2. For purposes of this section, deception occurs when a person intentionally:

    A. Creates or reinforces an impression which is false and which that person does not believe to be true, including false impressions as to law, value, knowledge, opinion, intention or other state of mind.

D), 17–A M.R.S.A. § 453 (1983).[2] The gravamen of the charges was that Jackson falsely told workers[3] of the Department of Human Services (DHS) that Patricia A. Hopkins,[4] the mother of his three-year-old son, was not living with them and that as a result those workers caused DHS to give him food stamps and Aid to Families with Dependent Children (AFDC) benefits that they would not have otherwise approved. On appeal defendant Jackson contends that at his trial the presiding justice failed to instruct the jury adequately and also erred in several respects in admitting evidence offered by the State. We reject those contentions and accordingly affirm the judgments of conviction.

On the evidence before it the jury was justified in finding the following facts beyond a reasonable doubt. Throughout the period from January 1982 to November 1983, Patricia Hopkins lived with defendant Jackson and their young child at three successive apartment locations in Portland. In February 1982 Jackson applied to DHS for AFDC benefits, falsely telling the worker taking his application that he and Ms. Hopkins had separated, leaving him with custody of their young child, and that the mother lived elsewhere. Relying upon that false statement that worker caused AFDC payments to be made to Jackson. In July 1982 Jackson applied to DHS for food stamps and again falsely told a DHS worker that Ms. Hopkins was not living with him. Relying upon that false statement as a basis to disregard the income of Ms. Hopkins, that second worker authorized Jackson to receive food stamps. On twelve other occasions through October 1983 defendant Jackson made the same false statement to several DHS workers charged with reviewing Jackson's eligibility for AFDC and food stamps. Jackson also transmitted to DHS workers false statements of Patricia Hopkins' place of residence prepared by Ms. Hopkins herself.[5] Jackson necessarily knew that his denial of Ms. Hopkins' living with him was false. As a result of his repeated false statements to the DHS workers, Jackson received $3,502 in AFDC benefits and $1,796 in food stamps. The DHS workers testified at trial that but for Jackson's statements that Ms. Hopkins was living elsewhere than in his apartment, they would not have given him those benefits.

## I. *Jury Instructions*

In this case only two issues were properly before the jury: 1) Did Jackson intentionally and knowingly lie to the DHS workers in repeatedly telling them that Ms. Hopkins did not live with him? and 2) But for Jackson's false statements would those workers have denied him benefits? As to the second issue there was no real factual dispute. As to the first, notwithstanding defendant's appellate argument to the contrary, the presiding justice gave a full and correct jury instruction. He charged them that to convict Jackson they must find both that Ms. Hopkins was in fact living with Jackson and also that Jackson subjectively did not believe the contrary. The justice did not define the meaning of the term "living with," but he did tell the jury to apply "the common sense everyday English language" meaning to any such undefined term.

■ First, defendant complains on appeal that the justice did not define for the jury the technical terms "continued absence," "uninterrupted absence," and "dep-

---

2. So far as here relevant, 17–A M.R.S.A. § 453 (1983) provides:
   1. A person is guilty of unsworn falsification if:
   . . . .
   B. With the intent to deceive a public servant in the performance of his official duties, he
   (1) makes any written false statement which he does not believe to be true. . . .

3. The responsible DHS workers, who acted upon defendant Jackson's false representations, included at least five Income Maintenance Specialists and two Income Maintenance Supervisors.

4. Patricia A. Hopkins was separately indicted, tried, and convicted on similar criminal charges. *See State v. Hopkins,* 520 A.2d 334 (Me.1987).

5. Throughout the period of defendant's receipt of AFDC and food stamps, Ms. Hopkins was a secretary in the DHS office in Portland.

rivation" appearing in the AFDC and food stamp eligibility regulations. However, Jackson never asked for such an instruction at trial, and in any event he was not entitled to it. Jackson raised no issue at trial, and raises no issue now on appeal, as to the legal correctness of the DHS workers' denial of food stamps and AFDC benefits to him if Ms. Hopkins was in fact living with him. Any instruction defining those technical terms relating to legal eligibility "would serve only to confuse and mislead the jury." *Cf. State v. Gilbert,* 473 A.2d 1273, 1277 (Me.1984) (issue not generated by the evidence).

■ Second, defendant complains on appeal that the presiding justice refused to give his requested instruction on his attempted defense of ignorance or mistake. It escapes our comprehension how Jackson could possibly claim ignorance or mistake on the fact question whether Ms. Hopkins was living at his apartment. In any event, the justice fully instructed the jury that to convict Jackson they must find that he subjectively knew he was stating a falsehood. Jackson could demand no more. *See State v. Franzen,* 461 A.2d 1068, 1073 (Me.1983).

## II. *Testimony of DHS Workers*

■ At Jackson's trial several DHS workers, each of whom testified that, *but for* Jackson's statements that Ms. Hopkins did not live at the same apartment as he and their little boy, they would not have approved either AFDC benefits or food stamps for him, also described *why.* They explained their administration of the AFDC and food stamp programs under the applicable federal and state statutes and regulations. It fell well within the scope of the presiding justice's discretion to permit those workers, all qualified by extensive experience, to give their background explanations to aid the jury in understanding the case. *See* M.R.Evid. 702. Jackson takes nothing by his argument on appeal that the workers' testimony usurped the function of the presiding justice in instructing the jury on the applicable law.

## III. *Other Claims of Evidentiary Error*

We find no reversible error in any of defendant's other claims of error in the admission of evidence, only some of which alleged errors were preserved at trial for appellate review.

■ Evidence of Ms. Hopkins' income was relevant to explain why the DHS workers would not have authorized food stamps for Jackson if they had known the truth.

■ Testimony of the daughter of Jackson's landlord that Ms. Hopkins said she would assume responsibility for the rent was properly admitted as a hearsay exception under M.R.Evid. 803(3) to prove Ms. Hopkins' state of mind, and for its tendency in turn to show that she was sharing the apartment with Jackson.

■ The applications submitted by Ms. Hopkins to the gas company for service were admissible under the business records exception to M.R.Evid. 803(6). Even if the listing of her prior residences (coinciding with Jackson's) could not be admitted under that exception, any error would be plainly harmless in light of the abundant other evidence of the falsity of Jackson's statement. *See State v. True,* 438 A.2d 460, 467 (Me.1981).

■ Finally, the evidence of the 1980 DHS administrative hearing in which Jackson's eligibility for food stamps was terminated was relevant to Jackson's knowledge that he could not get food stamps if Ms. Hopkins was living at his apartment. Although the 1983 DHS hearing came after Jackson had already perpetrated his fraud upon the DHS workers, we conclude that its admission was not obvious error because the evidence of the administrative termination of his food stamps merely confirms the undisputed fact that those workers would never have started or continued Jackson on food stamps in the absence of his false representations that Ms. Hopkins was living elsewhere.

The entry is:

Judgments of conviction affirmed.

All concurring.