JOURNAL ENTRY AND OPINION
{¶ 1} Defendant Bryan Durham appeals his conviction for felonious assault, a second-degree felony (R.C. 2903.11). For the reasons set forth herein, we reverse the trial court's judgment and remand for a new trial.
 {¶ 2} Defendant was indicted by a Cuyahoga County Grand Jury on one count of felonious assault. It was undisputed at trial that the complaining witness, Matthew Krug, and defendant had a disagreement over defendant's dumping of a load of concrete at Krug's place of employment, Cuyahoga Material. Upon observing wood, clay and garbage in the concrete, Krug informed defendant that he must put the load back onto his truck, as Cuyahoga Material, which recycles concrete, could not accept concrete containing excessive debris. Defendant removed a tree branch and a piece of garbage from the concrete, and otherwise refused to return the load to his truck.
 {¶ 3} What followed was the hotly contested issue at trial. According to Krug, he then simply turned to go back to his truck when defendant struck him from behind and continued to punch him while he was on the ground. Defendant, on the other hand, testified that Krug was determined to put the concrete back on the defendant's truck, that the argument escalated, that Krug approached him, yelling and screaming, and then "head butted" him. Defendant maintained that when he pushed Krug away from him, Krug came back towards him, and that out of fear and an effort to protect himself, the defendant responded by exchanging punches with Krug. The two men threw several punches, eventually falling to the ground and separating.
 {¶ 4} Defendant's sister was a witness in his defense. She had accompanied defendant to the dump site on the day in question. She testified that she had exited the truck and witnessed the entire fight, which took place to the rear of the truck. She asserted that Krug had been, as defendant testified, the initial aggressor. Krug maintained that he never saw defendant's sister leave the truck.
 {¶ 5} While defendant had a scratch on his face and redness on his neck, Krug suffered a possible small fracture to his jaw bone and a sinus area fracture. Although not reflected in the medical records, Krug claimed to have had five hours of surgery as a result of the injuries suffered. Photographs introduced at trial showed the left side of Krug's face to be badly bruised.
 {¶ 6} The jury convicted defendant of felonious assault and the trial court sentenced him to a term of six years imprisonment. Defendant filed this timely appeal and asserted seven assignments of error. For the reasons stated below, we address and sustain defendant's second, third and sixth assignments of error, reverse his conviction, and remand for a new trial. Defendant's remaining assignments of error are rendered moot.[1]
 Improper Admission of Prior Felonious Assault Charge
 {¶ 7} In his second assignment of error, defendant asserts that he was deprived of his due process right to a fair trial when the prosecutor cross-examined a defense witness about defendant's prior arrest and charge for felonious assault. We agree.
 {¶ 8} As this court has noted, "An accused cannot be convicted of one crime by proving he committed other crimes or is a bad person." State v. Goines (1996), 111 Ohio App.3d 840,844, 847, citing State v. Jamison (1990), 49 Ohio St.3d 182,184. Accordingly, prior crimes, wrongs and bad acts unrelated to the offense for which a defendant is on trial are generally inadmissible to show criminal propensity. Id. at 844.
 {¶ 9} In the case at bar, the prosecutor was permitted to elicit, on cross-examination of defendant's sister, extensive details about a prior felonious assault charge against defendant in which his sister was the alleged victim. The case was ultimately dismissed. The prosecutor argued below, and the state now argues on appeal, that the facts of defendant's prior assault charge were used to demonstrate that his sister, who worked for defendant, had a financial interest in the outcome of the trial. The state also maintains that the evidence was properly admitted to impeach defendant's character.
 {¶ 10} The fact that defendant's sister was an alleged victim in an alleged crime with which defendant had been charged in the past had no bearing whatsoever on whether his sister had a financial interest in the outcome in the present case. The prosecutor was allowed to fully develop his theory as to the sister's financial interest, and any potential bias resulting therefrom, through questions about her employment status with the defendant. Indeed, the prosecutor successfully established that the sister's work for the defendant was her sole source of income. That the sister had decided not to pursue charges stemming from an alleged fight with her brother in the past bore no relationship either to her current working relationship with, or her financial dependence on, the defendant.
 {¶ 11} Nor was the evidence properly admitted, as the state suggests, to impeach the defendant's character. Defendant's sister testified as the only alleged eyewitness to the altercation between defendant and the complaining witness. At no time on direct examination was she asked about or did she allude to the defendant's character. Instead, early in his cross-examination, the prosecutor attempted to transform the sister into a character witness, asking her, "Can you tell the people of the jury what type of person your brother is?" The sister responded that her brother had "good ways and bad ways." The prosecutor pressed further and asked, "Is he a violent person?" He then pursued a line of questioning designed to highlight the details of defendant's alleged fight with his sister, the subsequent arrest and charge for felonious assault, and the reasons behind the sister's decision not to pursue the charges against her brother.
 {¶ 12} Although the trial court implicitly recognized, at a sidebar, that neither the defense nor the witness had placed defendant's character in issue, it nonetheless ruled, sua sponte, that the evidence about the prior assault charge was admissible to impeach the sister's credibility. We do not agree, however, that any probative value of the detailed circumstances surrounding defendant's prior charged crime involving his sister outweighed the prejudicial effect of the admission of the prior alleged crime — the details of which became the subject of nearly half of the cross-examination.
 {¶ 13} We therefore conclude that the trial court abused its discretion when it permitted the prosecutor to elicit the details of defendant's prior felonious assault charge. This error was only further compounded when the trial court sustained the prosecutor's objection to defense counsel's argument in summation that the evidence of the prior alleged felonious assault involving defendant's sister did not prove that defendant was guilty of felonious assault in this case. Defendant's second assignment of error is thus sustained.
Improper Admission of Prior Felonious Assault Conviction
 {¶ 14} In his third assignment of error, defendant asserts that he was deprived
 {¶ 15} of his right to a fair trial by the admission of the details of his prior conviction for felonious assault. This assignment also has merit.
 {¶ 16} There are exceptions to the general rule prohibiting the admission of other crimes evidence to show criminal propensity. Thus, pursuant to Evid.R. 609(B), a criminal defendant's credibility may be impeached with evidence of a prior crime "if the court determines that the probative value of theevidence outweighs the danger of unfair prejudice or confusion ofthe issues, or of misleading the jury." (Emphasis added.)
 {¶ 17} In the case at bar, defendant testified that he and the complainant, Matthew Krug, had seen each other on several prior occasions when defendant dumped concrete at Cuyahoga Material, Krug's place of employment. Defendant was asked on direct examination whether he and Krug had ever exchanged cross words, to which defendant responded:
 {¶ 18} "Never. Never. I've seen him on several occasions. Never. Never an altercation with him or anyone else, for that matter, at any other dump." (Tr. 229.)
 {¶ 19} After making this statement, defendant testified further on direct that, in 1992, he pleaded guilty to felonious assault. He explained that, although he understood he could go to jail, he had pleaded guilty because he was guilty.
 {¶ 20} The prosecutor began his cross-examination of defendant with a barrage of questions about the prior felonious assault conviction, emphasizing it was the same offense as charged in the present case:
 {¶ 21} PROSECUTOR: Mr. Durham, you told the ladies and gentlemen of the jury you were convicted of felonious assault.
 {¶ 22} DEFENDANT: Yes, sir.
 {¶ 23} PROSECUTOR: The same crime?
 {¶ 24} DEFENDANT: I pled guilty to felonious assault in `92.
 {¶ 25} PROSECUTOR: And that's the same crime you're chargedwith here today, correct?
 {¶ 26} DEFENDANT: Yes.
 {¶ 27} PROSECUTOR: Did you go to prison?
 {¶ 28} DEFENDANT: Yes, I did.
 {¶ 29} [DEFENSE COUNSEL]: Objection.
 {¶ 30} THE COURT: Overruled. Tr. at 239. Emphasis added.
 {¶ 31} Thereafter, the prosecutor elicited, over continued defense objection, the details of defendant's prison sentence, establishing that he was imprisoned for six years on a sentence of five to fifteen years. The prosecutor then moved on to the specific details of the prior assault:
 {¶ 32} PROSECUTOR: What was — what happened in the situation?
 {¶ 33} [DEFENSE COUNSEL]: Continuing objection to the entire line.
 {¶ 34} THE COURT: Go ahead.
 {¶ 35} DEFENDANT: I had a fight with my ex-girlfriend and her boyfriend. It was two counts of five to 15.
 {¶ 36} PROSECUTOR: Two counts of five to 15?
 {¶ 37} DEFENDANT: Not one count.
 {¶ 38} PROSECUTOR: So it was two victims?
 {¶ 39} DEFENDANT: Yes. And I did six years.
 {¶ 40} PROSECUTOR: You did six years?
 {¶ 41} DEFENDANT: Yes, sir.
 {¶ 42} PROSECUTOR: What did you do to the two victims in that case?
 {¶ 43} [DEFENSE COUNSEL]: Objection. (Tr. 240-241.)
 {¶ 44} At this point, a sidebar was held. Defense counsel argued that the prosecutor was "trying this case by showing that he committed other offenses in the past similar to this one and then, therefore, he's obviously done this one. He admitted he was charged with the felonious assault. If it goes to impeachment, that should be the end of it." (Tr. 241-242.)
 {¶ 45} The prosecutor offered his justification for exploiting defendant's prior criminal conviction. After first citing his patently erroneous belief that a criminal defendant opens the door to his prior crimes by simply testifying in his own defense, the prosecutor essentially admitted that the evidence was being offered to demonstrate criminal propensity:
 {¶ 46} Your Honor, counsel opened the door to this line of questioning by, first, calling this witness to the stand. Second I asked him about his criminal conviction for felonious assault. I'm only going into the nature of the situation. It may show apattern of criminal activity. Tr. at 242. Emphasis added.
 {¶ 47} Obviously recognizing the impropriety of the prosecutor's arguments, the trial court came to his rescue, citing its own recollection, albeit a mistaken one, that defendant testified on direct examination that "he didn't have a problem with anyone ever before." When defense counsel countered that defendant was speaking about the day in question, and had, in fact, admitted his prior conviction on direct, the court responded, "I don't know what he was talking about. I know what he said. Okay. Your objection is overruled."
 {¶ 48} The prosecutor was then allowed to question defendant about the details of his prior assault conviction, eliciting from defendant that there were two counts of assault, two victims, and that he had hit both his ex-girlfriend and her boyfriend. Notably, when the defendant tried to explain his actions, asserting "[i]t was just a fight," the prosecutor once again emphasized the similarities between his prior conviction and the current charge, asking, "A fight like this fight?"
 {¶ 49} The trial court's decision to permit the prosecutor to exploit defendant's prior conviction for felonious assault was an abuse of discretion. The record before us is unequivocal and clear: defendant testified that he had never had an altercation with Krug or anyone else at any dump site. He then went on to admit his conviction and specifically acknowledge his guilt of felonious assault. The trial court's ruling that the defendant had opened the door on direct examination by somehow painting a picture of himself as a peaceful, law abiding citizen is belied by the record before us. Indeed, defense counsel below pointed out the inconsistency to the trial court, asserting that defendant's admission of his prior assault conviction directly contradicted the court's recollection of his testimony about whether he had ever before had a problem with anyone.
 {¶ 50} The prosecutor's line of questioning was clearly designed to highlight the fact that the prior conviction was for the same crime as charged in this case. This error was likewise further compounded by the trial court's ruling prohibiting defense counsel from arguing in summation that defendant's prior conviction for assault was not evidence of his guilt of the crime charged. On the other hand, the prosecutor was permitted, in his summation, to mischaracterize defendant's testimony about whether he had ever before had a problem with anyone and to highlight the prior conviction.
 {¶ 51} In a case that turned on whether the jury believed the defendant or the complaining witness, it was error to allow the prosecutor to elicit extensive details about defendant's prior conviction for the same offense. Defendant's third assignment of error is thus sustained.
The Erroneous Self-Defense Instruction
 {¶ 52} In his sixth assignment of error, defendant argues that he was deprived of a fair trial when the trial court utilized the deadly force, rather than the non-deadly force instruction on self-defense. This assignment of error is also sustained.
 {¶ 53} We note that defense counsel did not specifically object to the deadly force instruction on self-defense. However, pursuant to Crim.R. 52(B), this court may, in the absence of objection, notice plain errors or defects which affect a substantial right. To rise to the level of plain error, the alleged error must have substantially affected the outcome of the trial. State v. Slagle (1992), 65 Ohio St. 3d 597, 604-605.
 {¶ 54} Under the language of OJI 411.31(2) a criminal defendant may use deadly force in his own defense when (1) he reasonably believed he was in imminent danger of death or great bodily harm, and (2) his only means of escape was by the use of deadly force. In contrast, OJI 411.33(2), offers a less rigid standard for proving self-defense when non-deadly force is involved in that a defendant need only demonstrate that he reasonably believed he was in imminent danger of bodily harm and that his only means of protecting himself was by use of force not likely to cause death or great bodily harm.
 {¶ 55} This court has explained the proportionality requirement of self-defense instructions as follows:
 {¶ 56} While it is true that a reason [sic] or perceived threat of death or great bodily harm is required in order for the use of deadly force to be justified as self-defense, such a grave threat is not necessary in cases where less than deadly force is used to repel a feared attack. As this court has pointed out before, one may use such force as the circumstances require to protect oneself against such danger as one has good reason to apprehend. Thus, even when faced with less than impending death or great physical harm, one may use reasonable force in order to protect oneself against a perceived danger. To hold otherwise would mean that one could not legally defend oneself against a less serious assault, but would instead have to submit to an extremely offensive yet only mildly injurious attack. State v.Jordan (Feb. 28, 1991), Cuyahoga App. No. 56493, 1991 Ohio App. LEXIS 854, at **8-9 (citations omitted).
 {¶ 57} Accordingly, in cases where a defendant has used his fists, rather than a weapon, to defend himself, and the use of force was clearly not deadly, courts have consistently held that the use of the deadly force instruction "seriously limited the availability of self-defense and necessarily prejudiced [the] defense." City of Akron v. Dokes (1986), 31 Ohio App.3d 24, 26; see, also, State v. Pannetti (Sept. 3, 1998), Cuyahoga App. No. 73044, 1998 Ohio App. LEXIS 4123.
 {¶ 58} We find that, given the evidence regarding the circumstances of the fight in question in this case, it was plain error for the court to require the defendant to prove that he believed he was about to be killed or suffer great bodily harm in order to defend himself against the complaining witness when he allegedly came back at the defendant after head butting him. Id. Instead, the court should have instructed the jury that before responding with reasonable force, the defendant was required to prove only that he had reasonable grounds to believe he was in imminent danger of bodily harm.
 {¶ 59} In light of the fact that the question of defendant's guilt turned on which version of events the jury believed — defendant's or Krug's — it cannot be said that the outcome of the trial was not substantially affected by the trial court's erroneous self-defense instruction. Defendant's sixth assignment of error is thus sustained.
 {¶ 60} In sum, defendant was deprived of his due process right to a fair trial by the improper admission of prior bad act evidence, the admission of the details of defendant's prior felonious assault conviction, and the trial court's improper instruction on self-defense. Accordingly, we reverse the trial court's judgment of conviction and remand the case for a new trial.
It is ordered that appellant recover from appellee costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Dyk, A.J., and Celebrezzee, Jr., J., concur.
[1] These assignments of error read as follows:
I. THE STATE'S USE OF PEREMPTORY CHALLENGES WAS EXERCISED IN A DISCRIMINATORY MANNER AND RESULTED IN AN ALL-WHITE JURY; THE CONDUCT VIOLATED DEFENDANT'S EQUAL PROTECTION RIGHTS AS A BLACK CITIZEN UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.
IV. WHETHER THE PROSECUTOR'S COMMENTS DURING CLOSING ARGUMENT REGARDING THE DETAILS OF THE PRIOR FELONIOUS ASSAULT CONVICTION, WHICH MAGNIFIED THE ERROR SET FORTH UNDER ASSIGNMENT OF ERROR III, HIS IMPROPERLY VOUCHING FOR THE CREDIBILITY OF A STATES [SIC] WITNESS, HIS ACCUSATIONS THAT DEFENSE COUNSEL WAS PRESENTING "SMOKE SCREENS" AND ENGAGING IN "SLICK LAWYERING" AND THE TRIAL COURT'S PROHIBITING THE DEFENSE FROM MAKING A FAIR AND PROPER ARGUMENT TO THE JURY VIOLATED DUE PROCESS AND DEFENDANT'S CONSTITUTIONAL RIGHT TO A FAIR TRIAL UNDER THEFOURTEENTH AMENDMENT.
V. TO THE EXTENT THAT DEFENSE COUNSEL DID NOT PROPERLY OBJECT TO THE INTRODUCTION OF IMPROPER BAD ACTS, IMPROPER IMPEACHMENT EVIDENCE, IMPROPER CHARACTER EVIDENCE, IMPROPER CLOSING ARGUMENT, THE CONVICTION SHOULD BE REVERSED BASED ON PLAIN ERROR AND THE FAILURE TO RECEIVE THE EFFECTIVE ASSISTANCE OF COUNSEL UNDER THESIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.
VII. THE CUMULATIVE EFFECT OF ALL OF THE ERRORS DEPRIVED THE DEFENDANT OF THE CONSTITUTIONAL RIGHT TO A FAIR TRIAL.