DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Henry Kewer, appeals from his conviction in the Lorain County Court of Common Pleas. This Court affirms.
 I. {¶ 2} On July 16, 2006, Deputy Anthony Pluta was dispatched to a disturbance at property owned by Samuel Dennis. Upon arriving at the scene, Pluta discovered Charles "Tommy" Jones covered in blood near the entrance to the property. Jones was drifting in and out of consciousness. Pluta radioed for medical support and began investigating the incident. Upon Pluta's questioning, Jones indicated that Kewer had caused his injuries. Pluta then approached the *Page 2 
others at the scene and was approached by Kewer's daughter, C.S., who stated that "they are fighting." Following that remark, Pluta witnessed Kewer's brother, Philip Kewer, and Philip's girlfriend rolling around on the ground. After separating the two and placing the girlfriend under arrest for an outstanding warrant, Pluta interviewed the remaining witnesses. Witnesses at the scene were less than forthcoming. Most of the witnesses stated that they had not witnessed the altercation. Kewer denied that any fight had occurred, stating that he and Jones were "messing around" and fell to the ground. Kewer, however, did apologize for injuring Jones. In addition, C.S. told Pluta that her father had struck Jones with a boat oar.
 {¶ 3} Based on the information gathered by Pluta, Kewer was indicted on one count of felonious assault in violation of R.C. 2903.11(A)(1). The matter proceeded to a jury trial on February 12, 2007. During that trial, Kewer argued that he had acted in self-defense. At the close of the evidence, the jury found Kewer guilty of the sole count in the indictment. The trial court sentenced Kewer to five years incarceration. Kewer timely appealed his conviction and sentence, raising three assignments of error for review.
 II. ASSIGNMENT OF ERROR I "THE TRIAL COURT IMPROPERLY INSTRUCTED THE JURY AS TO THE ELEMENTS OF SELF-DEFENSE, THEREBY DENYING APPELLANT HIS RIGHTS TO DUE PROCESS OF LAW AND A FAIR TRIAL, UNDER THE SIXTH AND *Page 3 
 FOURTEENTH AMENDMENTS TO THE U.S CONSTITUTION AND ARTICLE I, § 10 OF THE OHIO CONSTITUTION."
 {¶ 4} In his first assignment of error, Kewer asserts that the trial court improperly instructed the jury on self-defense. Specifically, Kewer claims that the trial court erred by referencing the use of deadly force. This Court disagrees.
 {¶ 5} A trial court must charge a jury with instructions that are a correct and complete statement of the law. Marshall v. Gibson (1985),19 Ohio St.3d 10, 12. "However, the precise language of a jury instruction is within the discretion of the trial court." Callahan v. Akron Gen.Med. Ctr., 9th Dist. No. 22387, 2005-Ohio-5103, at ¶ 6, citingYoussef v. Parr, Inc. (1990), 69 Ohio App.3d 679, 690. In reviewing jury instructions, this Court has previously stated:
 "[A]n appellate court reviews the instructions as a whole. If, taken in their entirety, the instructions fairly and correctly state the law applicable to the evidence presented at trial, reversible error will not be found merely on the possibility that the jury may have been misled. Moreover, misstatements and ambiguity in a portion of the instructions will not constitute reversible error unless the instructions are so misleading that they prejudicially affect a substantial right of the complaining party." (Internal citations omitted.) Wozniak v. Wozniak (1993), 90 Ohio App.3d 400, 410.
This Court, therefore, must affirm the trial court's jury instructions absent an abuse of discretion. State v. Franklin, 9th Dist. No. 22771,2006-Ohio-4569, at ¶ 10. The phrase "abuse of discretion" connotes more than an error of judgment; rather, it implies that the trial court's attitude was arbitrary, unreasonable, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, this court may not substitute its *Page 4 
judgment for that of the trial court. Pons v. Ohio State Med. Bd, (1993), 66 Ohio St.3d 619, 621.
 {¶ 6} Kewer argues that the trial court should have given an instruction to the jury that related to the use of non-deadly force in self-defense. Kewer is correct that the law distinguishes between deadly and non-deadly force.
 "While it is true that a real or perceived threat of death or great bodily harm is required in order for the use of deadly force to be justified as self-defense, such a grave threat is not necessary in cases where less than deadly force is used to repel a feared attack. As this court has pointed out before, one may use such force as the circumstances require to protect oneself against such danger as one has good reason to apprehend. Thus, even when faced with less than impending death or great physical harm, one may use reasonable force in order to protect oneself against a perceived danger. To hold otherwise would mean that one could not legally defend oneself against a less serious assault, but would instead have to submit to an extremely offensive yet only mildly injurious attack." (Internal citations omitted.) Akron v. Dokes (1986), 31 Ohio App.3d 24, 25.
Kewer is also correct that the Ohio Jury Instructions provide different instructions for deadly and non-deadly force.
 "Under the language of OJI 411.31(2) a criminal defendant may use deadly force in his own defense when (1) he reasonably believed he was in imminent danger of death or great bodily harm, and (2) his only means of escape was by the use of deadly force. In contrast, OJI 411.33(2), offers a less rigid standard for proving self-defense when non-deadly force is involved in that a defendant need only demonstrate that he reasonably believed he was in imminent danger of bodily harm and that his only means of protecting himself was by use of force not likely to cause death or great bodily harm." State v. Durham, 8th Dist No. 87391, 2006-Ohio-5015, at ¶ 54.
 {¶ 7} In cases where a defendant has defended himself with his hands, courts have found that a non-deadly force instruction was appropriate. See Dokes, *Page 5 
supra; Durham, supra. In contrast, when a defendant has used a weapon to inflict serious harm on the victim, courts have found no error in denying an instruction on non-deadly force. See State v. Hansen, 4th Dist. No. 01CA15, 2002-Ohio-6135 (finding that using a lock blade knife warrants an instruction on the use of deadly force); State v.Wagner (July 14, 2000), 11th Dist. No. 99-L-043 (concluding that striking someone in the head with a broken wineglass is the use of deadly force).
 {¶ 8} Our review of the evidence does not support Kewer's claim that an instruction on the use of non-deadly force should have been given. By his own admission, Kewer struck Jones in the forehead with a piece of "rough-cut oak" that was two inches wide by two inches thick and roughly seven feet long. The State also introduced evidence that Kewer struck Jones with such force that his skull was exposed by the injury. Jones testified that stitches were necessary on the wound internally and externally to repair the damage caused by Kewer. Moreover, R.C.2901.01(A)(2) defines "deadly force" as "any force that carries a substantial risk that it will proximately result in the death of any person." Given the size of the weapon used by Kewer and the extent of the injury suffered by Jones, we find no abuse of discretion in the trial court's decision to instruct the jury on the use of deadly force.
 {¶ 9} Finally, we note that Kewer's argument that "[t]he record is void of evidence of deadly force, obviously, because this is not a homicide case" is unsupported by the law. "Deadly force" requires a substantial risk that a death *Page 6 
will result. It does not require an actual death to occur. The trial court, therefore, did not err in its jury instructions.
 {¶ 10} Kewer's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II "THE CONVICTION FOR FELONIOUS ASSAULT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 11} In his second assignment of error, Kewer asserts that his conviction for felonious assault was against the manifest weight of the evidence. We disagree.
 {¶ 12} When considering a manifest weight argument, this Court:
 "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. State v. Thompkins (1997), 78 Ohio St.3d 380, 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id. Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in *Page 7 
which the evidence weighs heavily against the conviction." State v.Martin (1983), 20 Ohio App.3d 172, 175; see, also, Otten,33 Ohio App.3d at 340.
 {¶ 13} Kewer was convicted of one count of felonious assault in violation of R.C. 2903.11(A)(1) which provides that "[n]o person shall knowingly * * * [c]ause serious physical harm to another[.]" Upon review of the evidence, we cannot conclude that the jury lost its way when it convicted Kewer.
 {¶ 14} The State relied primarily on the testimony of two witnesses. Jones testified about the encounter, and Deputy Anthony Pluta testified regarding his investigation of the event.
 {¶ 15} Jones testified as follows. Jones knew Kewer since junior high and they had been friends since that time. On July 16, 2006, a large group of individuals, including children, went to property owned by Samuel Dennis. The property had the layout of a campground, with several ponds, a camper, and a picnic area. Kewer came to the property that night with a woman named Cher Garella. Many of the adults drank beer throughout the day. When Kewer and Garella were preparing to leave, Jones went to urinate in the nearby bushes. As a result of going to the driver's side of her car, Garella was in the same vicinity as Jones. Kewer then made a derogatory remark toward Garella, insinuating that Garella was assisting Jones by "holding his d**k" while he urinated.
 {¶ 16} Jones continued his testimony as follows. Kewer then walked over near the camper on the property and Jones followed him. Jones commented that *Page 8 
the mother of one of Kewer's children had recently been to see Jones. This woman, Melissa Studebaker, informed Jones that she had no money for groceries because Kewer had spent the money on other items. Kewer then asked Jones why he would make such a comment in front of other people. Kewer stood from his seated position, approached Jones, and Jones stood as well. Kewer then shoved Jones slightly and struck him in the head with an object. Jones fell to the ground and Kewer struck him again on the ankle. Jones pulled Kewer to the ground by his belt loop and the two wrestled on the ground. Kewer's brother, Philip, attempted to stop the fight and he was attacked by Jones' dog. Jones and Kewer were separated at that point and Kewer walked to the other side of a nearby truck. Jones then picked up an oak tree branch and threw it at Kewer, striking him in the side of the head. Jones took off running from the property at this point, collapsing near the road.
 {¶ 17} Jones concluded his testimony as follows. He stated that he was aware of Kewer's violent past, testifying that:
 "Well, he tore his brother's leg up and told him he would take care of him after he ripped all the cartilage and bone * * * off his leg.
 "He almost killed this other guy that was messing with his girlfriend at the time, and he had to be life-flighted to Toledo."
 {¶ 18} Deputy Anthony Pluta also testified on behalf of the State. Pluta testified as follows. He was dispatched to the scene at 11:23 p.m. on the night in question. Upon arriving, he viewed the wound suffered by Jones and was able to *Page 9 
see his skull because of the depth of the wound. Kewer's daughter, C.S., approached Pluta, telling him that "they were fighting." Pluta investigated and found Kewer's brother, Philip, and Philip's girlfriend fighting. Upon separating the two and arresting the girlfriend on an outstanding warrant, Pluta interviewed the others present at the scene. No one was forthcoming with information about the assault. When Pluta first questioned Kewer, Kewer informed him that there had been no assault. Kewer stated that he and Jones were just messing around and they had slipped and fallen. When asked whether he had hit Jones with anything, Kewer said he could not remember but that the officer should ask his daughter. Without objection, Pluta testified that C.S. told him that her father had struck Jones with a boat oar. Pluta indicated that during his questioning of Kewer, Kewer apologized for injuring Jones.
 {¶ 19} Pluta concluded his testimony as follows. He interviewed everyone at the scene and did not locate a young girl who later claimed to be present, J.W. In the course of Pluta's interviews, no one stated that Jones had attacked Kewer or that Kewer was defending himself when he struck Jones.
 {¶ 20} In his defense, Kewer relied on his own testimony. In addition, Kewer called his daughter, C.S., to the stand and elicited the testimony of her friend, J.W.
 {¶ 21} C.S. testified as follows. She witnessed the altercation between Jones and Kewer. The two began arguing because Jones did not have a ride home *Page 10 
that night. Kewer stood up and Jones knocked him to the ground. The two then wrestled on the ground and Jones' dog attacked Kewer, biting his prosthetic leg. Jones then picked up a log and came toward Kewer. Kewer avoided being struck by the log and the two wrestled again. C.S. did not witness Kewer strike Jones with any object. C.S., however, did witness Jones strike her father with the tree branch.
 {¶ 22} During cross-examination, C.S. admitted that her direct examination was the first time she had ever told anyone that she witnessed the altercation. She admitted that she had been interviewed the day before trial and told investigators that she did not witness who started the fight. C.S. also admitted that she did not tell Deputy Pluta this version of events when she was interviewed the night of the incident.
 {¶ 23} Eleven-year-old J.W. also testified on behalf of Kewer. J.W testified as follows. On the night of incident, she was at the campground property with C.S. She had been friends with C.S. since she was two. J.W. was certain that the altercation started when Jones pushed Kewer to the ground. J.W., however, did not witness any other part of the altercation.
 {¶ 24} During her cross-examination, J.W. admitted that she was interviewed by the State on the day before trial. J.W. admitted that she did not tell anyone that Jones had pushed Kewer down until the day of trial. *Page 11 
 {¶ 25} Finally, Kewer testified on his own behalf. Kewer testified as follows. He went to the campground that night with a female friend, Cher Garella. Kewer argued with Garella when she was ready to leave because she had been drinking and he did not want her to drive. Jones than began yelling at him, stating that he was jealous because Garella had been flirting with Jones earlier that evening. Kewer stated that Jones was also upset because he no longer had a ride home. Kewer then walked away from Jones. Jones followed and began talking about Melissa Studebaker, the mother of Kewer's children. Kewer became upset when Jones stated that Studebaker did not have money to buy food for the children. Kewer then questioned Jones about whether he was contributing to Studebaker's drug problems and told Jones that he was not a "true friend."
 {¶ 26} Kewer continued his testimony as follows. Jones became very angry when questioned about possible drug use. Jones approached Kewer and pushed him down. The two began to wrestle and Jones' dog attacked Kewer. Jones then "come at me, and had a log in his hand and was coming at me to hit me." Kewer dodged the log when Jones threw it at him, picked up an object, and swung it at Jones to protect himself. Kewer later identified the object as a "2 X 2 board, was rough-cut oak, and it was approximately 6 and a half to 7 foot long." Kewer stated that he was certain that he only struck Jones once with the object. Kewer's brother then approached the two and they eventually separated. Jones then approached Kewer again, this time with a branch in his hand, and struck Kewer in the side of *Page 12 
the head. During his cross-examination, Kewer admitted that he lied to Deputy Pluta about the fight and about how his ear had been injured.
 {¶ 27} The remaining witnesses called at trial, Samuel Dennis, David Garrett, and Philip Kewer offered little substantive testimony. Each testified that he did not know who started the altercation. Each also testified that it was very difficult to see the altercation because of how dark the campground was on the night in question.
 {¶ 28} Upon review of the above evidence, we cannot conclude that the jury lost its way when it convicted Kewer of felonious assault. Upon hearing the above testimony, the jury was left to determine credibility. We find no error in their determination that Jones was a more credible witness. Jones was consistent in his testimony throughout the proceedings. The day after his injuries he gave a statement to Deputy Pluta and that statement remained consistent throughout trial. On the other hand, Kewer admittedly lied to Deputy Pluta during his first encounter. Moreover, Kewer's supporting witnesses, his daughter and her young friend, were less than credible as well. C.S. and J.W. both admitted that they had never told their version of events that was recounted at trial to anyone prior to the day of trial, despite being interviewed by the State the day before.
 {¶ 29} The jury's determination that certain witnesses were or were not credible, therefore, is supported by the record before this Court. Consequently, we *Page 13 
cannot say that the jury lost its way when it convicted Kewer. Kewer's second assignment of error is overruled.
 ASSIGNMENT OF ERROR III "THE TRIAL COURT ERRONEOUSLY IMPOSED A SENTENCE THAT EXCEEDED THE MINIMUM TERM OF IMPRISONMENT ON THE BASIS OF FINDINGS MADE BY THE TRIAL JUDGE, THEREBY VIOLATING APPELLANT'S RIGHT TO A TRIAL BY JURY."
 {¶ 30} In his final assignment of error, Kewer asserts that the trial court violated his constitutional right to a trial by jury. Specifically, Kewer alleges that the trial court improperly engaged in fact-finding to enhance his sentence. This Court finds no error.
 {¶ 31} In State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, the Ohio Supreme Court held that Ohio's sentencing structure was unconstitutional to the extent that it required judicial fact finding. Id. at paragraphs one through seven of the syllabus. In constructing a remedy, the Court excised the portions of the statute it found to offend theSixth Amendment and thereby granted full discretion to trial court judges to sentence defendants within the bounds prescribed by statute. See id.;State v. Dudukovich, 9th Dist. No. 05CA008729, 2006-Ohio-1309, at ¶ 19.
 {¶ 32} The U.S. Supreme Court took specific note that the exercise of this discretion, when not in the form of mandatory fact-finding, does not violate the Constitution. *Page 14 
 "If the Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment. We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range. Indeed, everyone agrees that the constitutional issues presented by these cases would have been avoided entirely if Congress had omitted from the SRA the provisions that make the Guidelines binding on district judges; it is that circumstance that makes the Court's answer to the second question presented possible. For when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant." (Emphasis added.) U.S. v. Booker (2005), 543 U.S. 220, 233.
Accordingly, to the extent that the trial court may have relied upon certain facts which it found relevant, after Foster, Kewer had no right to a jury determination of those facts. Kewer's final assignment of error, therefore, lacks merit.
 III. {¶ 33} Kewer's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal. We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into *Page 15 
execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellant.
 WHITMORE, P. J. MOORE, J. CONCUR *Page 1