DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 INTRODUCTION {¶ 1} After his girlfriend was arrested for attempting to use a stolen credit card, Rocky A. Hatfield let police officers search their residence for items she purchased with the card. In the basement, police found a power washer with the name M.P. Neiman etched into its frame and a new dishwasher, both of which Mr. Hatfield said he had purchased from a friend. A couple of weeks later, police *Page 2 
arrested Mr. Hatfield after he tried to steal a hat from a department store. At the time of the arrest, Mr. Hatfield had OxyContin and Vicodin pills in his possession. A month later at the county jail, Mr. Hatfield punched another inmate in the mouth, shattering his jaw. A jury convicted Mr. Hatfield of receiving stolen property, possession of drugs, aggravated possession of drugs, theft, obstructing official business, and felonious assault. This Court affirms his convictions because he has not established that he was entitled to an instruction on self-defense, because he forfeited any error arising out of the trial court's denial of his motion for separate trials, and because his convictions for receiving stolen property and felonious assault were not against the manifest weight of the evidence.
 FACTS {¶ 2} In December 2006, Mr. Hatfield's girlfriend was arrested for attempting to use a stolen credit card. Police officers went to the duplex in which she and Mr. Hatfield lived, and Mr. Hatfield allowed them to search for anything purchased with the credit card. In the basement of the duplex, they found a power washer and a new Kenmore dishwasher. The power washer had the name "M.P. Neiman" scratched into its frame. Mr. Hatfield told the police that he had bought the items from a friend named Roger for $100 each.
 {¶ 3} The police investigated whether the power washer and dishwasher were stolen, and located an individual named Maurice Neiman, who owned *Page 3 
several rental properties. Mr. Neiman told them that a power washer and a new Kenmore dishwasher recently had been stolen from one of his properties. He also told them that one of his employees, who had keys to his properties, often worked with a man named Roger. The police arrested Mr. Hatfield for receiving stolen property the following day. At the time of his arrest, he told the police that he was only storing the power washer and dishwasher for one of his friends.
 {¶ 4} Later that month, police responded to a situation at a department store and arrested Mr. Hatfield for allegedly stealing a hat. When they searched him, they found two OxyContin pills and a Vicodin pill. A couple of weeks later, police officers went to Mr. Hatfield's duplex to arrest him on multiple warrants. As they entered his unit, he used a hatch in the attic to crawl through to his neighbor's unit. When police realized that there was a passage between the units, they received permission from the neighbor to search her unit and found Mr. Hatfield in her bedroom.
 {¶ 5} A month later at the county jail, Mr. Hatfield punched an inmate named Dale Nye in the mouth. The last time Mr. Nye had seen Mr. Hatfield outside of the jail was to buy drugs. Mr. Nye had gone to Mr. Hatfield's home, had given him money, and had waited while he left to buy the drugs. When Mr. Hatfield did not return, Mr. Nye concluded that he had stolen his money. He, therefore, took a video game system from Mr. Hatfield's home as restitution. Mr. *Page 4 
Nye testified that Mr. Hatfield was angry because the video game system belonged to his daughter.
 {¶ 6} The Grand Jury indicted Mr. Hatfield for receiving stolen property, possession of drugs, aggravated possession of drugs, burglary, theft, and obstructing official business. It separately indicted him for felonious assault. Before trial, Mr. Hatfield moved for separate trials, but the trial court denied his motion. Mr. Hatfield also requested a self-defense instruction, but the trial court denied his request because he had not testified. A jury convicted Mr. Hatfield of receiving stolen property, possession of drugs, aggravated possession of drugs, theft, obstructing official business, and felonious assault. Mr. Hatfield has appealed, assigning three errors.
 SELF-DEFENSE INSTRUCTION {¶ 7} Mr. Hatfield's first assignment of error is that the trial court erred when it denied his request for a jury instruction on self-defense. Mr. Hatfield has argued that he met his burden of going forward with that defense because one of the other inmates at the jail testified that Mr. Nye was the aggressor in their altercation. The inmate testified that Mr. Nye had lunged at Mr. Hatfield and had tried to grab or tackle Mr. Hatfield before Mr. Hatfield punched him.
 {¶ 8} Self-defense is an affirmative defense, and both the burden of going forward and the burden of proof by a preponderance of the evidence are on the defendant. R.C. § 2901.05(A); State v. Martin,21 Ohio St. 3d 91, syllabus (1986). *Page 5 
"The trial court is not required to instruct the jury on self-defense in every situation in which its presentation is attempted; rather, a trial court need only instruct the jury on self-defense if the defendant `has introduced sufficient evidence, which, if believed, would raise a question in the minds of reasonable [jurors] concerning the existence of such issue.'" State v. Warner, 9th Dist. No. 96CA006534, 2001 WL 1155698
at *2 (Sept. 21, 2001) (quoting State v. Melchior, 56 Ohio St. 2d 15, paragraph one of the syllabus (1978)). "Evidence is sufficient where a reasonable doubt of guilt has arisen based upon a claim of self-defense." Melchior, 56 Ohio St. 2d at 20 (citing State v.Millett, 273 A.2d 504, 510 (Me 1971)). If, however, "the evidence generates only a mere speculation or possible doubt, such evidence is insufficient to raise the affirmative defense, and submission of the issue to the jury will be unwarranted." Id. (citing People v.Harris, 87 Cal. Rptr. 46, 48 (Cal.Ct.App. 1970)); see State v.Palmer, 80 Ohio St. 3d 543, 564 (1997) (concluding trial court properly refused to give self-defense instruction when there was insufficient evidence to support it).
 {¶ 9} The instruction for self-defense is different depending on whether deadly or non-deadly force was used. "In cases where a defendant has defended himself with his hands, courts have found that a non-deadly force instruction was appropriate." State v. Kewer, 9th Dist. No. 07CA009128, 2007-Ohio-7047, at ¶ 7. "To establish self-defense for the use of less than deadly force in defense of one's person, the defendant must prove: (1) he was not at fault in creating the situation *Page 6 
which gave rise to the event in which the use of non-deadly force occurred; (2) he had honest and reasonable grounds to believe that such conduct was necessary to defend himself against the imminent use of unlawful force; and (3) the force used was not likely to cause death or great bodily harm." State v. Tanner, 9th Dist. No. 3258-M, 2002-Ohio-2662, at ¶ 21; see City of Akron v. Dokes, 31 Ohio App. 3d 24, syllabus (1986) ("a grave threat [of death or great bodily harm] is not necessary in cases where less than deadly force is used to repel a feared attack").
 {¶ 10} Mr. Hatfield has argued that the trial court erred when it refused to give the jury a self-defense instruction because he did not testify. The trial court denied Mr. Hatfield's request for a self-defense instruction stating, "the instruction on self-defense goes to the defendant's perceptions and what he was thinking, and so if he doesn't testify . . . I think it's appropriate . . . that a self-defense instruction will not be given." When Mr. Hatfield renewed his request, the trial court stated "because the defendant did not take the stand to testify what his feelings were and what he was thinking, the Court did not give the instruction."
 {¶ 11} Mr. Hatfield is correct that a defendant does not need to testify to be entitled to a self-defense instruction. State v.McDade, 113 Ohio App. 397, 404 (1959) ("The evidence of self-defense may come wholly from the state. . . ."). There must be evidence, however, to support the instruction. The only testimony supporting a self-defense instruction in this case was from an inmate who testified that, "I was walking up the stairs and I heard [Mr. Hatfield] and [Mr. Nye] *Page 7 
arguing. [Mr. Nye] went to, I'd say, grab or do something towards him. [Mr. Hatfield] moved back. He defended himself and hit [Mr. Nye] one time." The inmate testified that Mr. Nye was approaching Mr. Hatfield, that they were arguing with each other, that Mr. Nye was the aggressor, and that it looked like Mr. Nye was going to tackle Mr. Hatfield. He further testified that, "[Mr. Nye] went to tackle him and all [Mr. Hatfield] did was he stood back and when he went by him he hit him one time, and that was the extent of the whole fight."
 {¶ 12} The inmate's testimony only raised the mere speculation that Mr. Hatfield acted in self-defense. Although the inmate testified that Mr. Nye was the aggressor and lunged at Mr. Hatfield, his testimony also established that Mr. Hatfield successfully evaded Mr. Nye before he struck him. The trial court, therefore, correctly concluded that, without any testimony from Mr. Hatfield about his perceptions at the time of the incident, there was insufficient evidence that he "had honest and reasonable grounds to believe that [his] conduct was necessary to defend himself against the imminent use of unlawful force."Tanner, 2002-Ohio-2662, at ¶ 21. Mr. Hatfield's first assignment of error is overruled.
 SEPARATE TRIALS {¶ 13} Mr. Hatfield's second assignment of error is that the trial court committed reversible error when it denied his motion for separate trials. He has argued that it was prejudicial for the felonious assault charge to be tried at the same time as the other charges because it led the jury to believe there was a *Page 8 
connection between them, even though they occurred on different days, in different locations, and involved different witnesses. The State has argued that Mr. Hatfield forfeited his argument because he did not renew his motion at the conclusion of its case or at the conclusion of all the evidence.
 {¶ 14} Whether Mr. Hatfield forfeited his argument depends on whether his motion was filed under Ohio Rule of Criminal Procedure 8 or 14. While a defendant's failure to renew a motion to sever based upon Rule 14 results in a forfeiture of that issue, "the same is not true for a motion based upon Rule 8. . . ." State v. Williams, 9th Dist. No. 23560,2008-Ohio-1048, at ¶ 52 (Dickinson, J., concurring); see also State v.Owens, 51 Ohio App. 2d 132, 146 (1975) (concluding that a Rule 14 motion to sever that is "not renewed either after the state rested or at the conclusion of all of the evidence . . . is waived"). Rule 8(A) provides that:
 Two or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct.
Rule 14 provides that:
 If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together of indictments, informations or complaints, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires. *Page 9 
The difference between the rules is that Rule 8 only addresses the joinder of multiple charges in the same indictment while Rule 14 also addresses the joinder of completely separate indictments. See UnitedStates v. Terry, 911 F.2d 272, 277-78 (9th Cir. 1990) (discussing the difference between Rule 8 and Rule 14 of the Federal Rules of Criminal Procedure).
 {¶ 15} Mr. Hatfield cited both rules in his motion for separate trials. He did not, however, argue that the multiple counts charged in the indictment in Case Number CR-2006-12-4361A should not have been included in a single indictment. Rather, he only argued that Case Number CR-2006-12-4361A should not be tried together with Case Number CR-2007-01-0246: "[T]he Defendant requests this Court grant him a separate trial for each indictment in this matter." At a pretrial hearing, Mr. Hatfield also requested that the indictments be tried separately: "At this time we will be requesting a trial date on both matters. The two cases aren't related to one another. So I would ask for two different trial dates." Accordingly, because Mr. Hatfield's motion for separate trials was, in substance, a motion based upon Rule 14, he forfeited any error regarding his motion when he failed to renew it at the close of the State's case or the conclusion of all the evidence. Mr. Hatfield's second assignment of error is overruled.
 MANIFEST WEIGHT {¶ 16} Mr. Hatfield's third assignment of error is that his convictions of receiving stolen property and felonious assault are against the manifest weight of *Page 10 
the evidence. When a defendant argues that his convictions are contrary to the manifest weight of the evidence, the appellate court must review and weigh all the evidence that was before the trial court:
 [A]n appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
State v. Otten, 33 Ohio App. 3d 339, 340 (1986).
 RECEIVING STOLEN PROPERTY {¶ 17} Section 2913.51(A) of the Ohio Revised Code provides that: "[n]o person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense." "Receive is not defined in the statute, but a generally accepted definition of receive is to acquire `control in the sense of physical dominion over or the apparent legal power to dispose of said property.'" State v. Brewer, 9th Dist. No. 99CA007483, 2000 WL 988766 at *2 (July 19, 2000) (quoting State v.Jackson, 20 Ohio App. 3d 240, 242 (1984)). "Possession of stolen property for purposes of the receiving stolen property statute, R.C.2913.51, may be constructive as well as actual. Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession." State v. Hankerson, 70 Ohio St. 2d 87, syllabus (1982). *Page 11 
 {¶ 18} "Absent an admission by a defendant, the element of reasonable cause to believe that an item was stolen can only be proved by circumstantial evidence." State v. Colon, 9th Dist. No. 20949, 2002-Ohio-3985, at ¶ 18 (citing Hankerson, 70 Ohio St. 2d at 92). "In determining whether reasonable minds could conclude that a defendant knew or should have known that property has been stolen, the following factors are relevant: `(a) [T]he defendant's unexplained possession of the merchandise, (b) the nature of the merchandise, (c) the frequency with which such merchandise is stolen, (d) the nature of the defendant's commercial activities, and (e) the relatively limited time between the thefts and the recovery of the merchandise.'" Id. at ¶ 18-19 (quotingState v. Davis, 49 Ohio App. 3d 109, 112 (1988)). "Possession of recently stolen property, if not satisfactorily explained, is ordinarily a circumstance from which a jury may reasonably infer and find, in the light of the surrounding circumstances shown by the case, that the person in possession knew that the property had been stolen." State v.Warren, 9th Dist. No. 16034, 1993 WL 175518 at *4 (May 26, 1993) (citingState v. Arthur, 42 Ohio St. 2d 67, 68 (1975)).
 {¶ 19} A police detective testified that, when he searched Mr. Hatfield's home, he found a power washer with the name "M.P. Neiman" scratched into the frame. He also found a new Kenmore dishwasher. When he interviewed Mr. Hatfield about those items, Mr. Hatfield told him that he bought them from his friend Roger for $100 each. When the detective asked Mr. Hatfield how he had *Page 12 
purchased the items for such a good price, Mr. Hatfield told him that he suspected that the items were stolen, but that his friend needed the money. After the detective confirmed that the items were stolen property and advised Mr. Hatfield of that fact, Mr. Hatfield "then said that they weren't his, he was just storing them, he had never bought them, he was just keeping them for his friend named Roger."
 {¶ 20} Mr. Neiman testified that some of his properties recently had been burglarized and that a power washer and a new Kenmore dishwasher were among the items taken. Mr. Neiman suspected it was someone within his organization because there was no sign of forced entry and because the perpetrator seemed to know exactly where things were located. Mr. Neiman testified that one of his employees had keys to all of his properties and that the employee lived for a period of time with his daughter and her boyfriend Roger. He further testified that Roger was familiar with his properties because he often helped his employee with his work. Mr. Neiman also knew that his employee would leave the keys to his properties in his truck and that Roger had permission to use the truck whenever he wanted.
 {¶ 21} Mr. Hatfield's conviction of receiving stolen property was not against the manifest weight of the evidence. Mr. Neiman's power washer and dishwasher were found in Mr. Hatfield's basement, giving him constructive possession of them. Considering that the power washer had Mr. Neiman's name etched into its frame, Mr. Hatfield had reasonable cause to believe it had been *Page 13 
stolen. Even if Mr. Hatfield did not notice Mr. Neman's name, Mr. Hatfield, himself, told the police that he suspected the items had been stolen. In addition, Mr. Hatfield gave the police inconsistent stories regarding whether he bought the items or was just storing them. The jury, therefore, did not lose its way when it convicted Mr. Hatfield of receiving stolen property. Mr. Hatfield's third assignment of error is overruled regarding his conviction of receiving stolen property.
 FELONIOUS ASSAULT {¶ 22} A person violates Section 2903.11(A)(1) of the Ohio Revised Code by knowingly causing serious physical harm to another. Under Section 2901.22(B), "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 23} A Summit County Jail corrections officer testified that, on January 19, 2007, Mr. Nye approached him holding his jaw and told him that he needed to see a doctor. The officer interviewed other inmates and determined that Mr. Hatfield had struck Mr. Nye. Mr. Nye also testified that Mr. Hatfield had struck him. Mr. Nye testified that Mr. Hatfield was standing near the bottom of a staircase and that, when he went over to talk to him, Mr. Hatfield punched him in the face. Mr. Nye asserted that Mr. Hatfield was upset with him because he had *Page 14 
taken Mr. Hatfield's daughter's video game system. After Mr. Hatfield punched Mr. Nye, he told him "[n]ow we're even" and walked away.
 {¶ 24} The corrections officer who transported Mr. Nye to the hospital testified that Mr. Nye told him at the hospital that Mr. Hatfield had "sucker-punched him." The punch displaced one of Mr. Nye's molars and fractured his jaw bone in multiple locations. Another corrections officer testified that Mr. Hatfield told him that Mr. Nye stole his daughter's video game system and that, "he had to do what he had to do." Although one of the inmates who had seen the incident testified that Mr. Nye was the aggressor and had tried to tackle Mr. Hatfield, Mr. Hatfield did not tell the corrections officers that Mr. Nye had been the aggressor.
 {¶ 25} Mr. Hatfield's conviction of felonious assault was not against the manifest weight of the evidence. Although Mr. Nye testified that he has a chemical dependency problem and is on probation for receiving stolen property, the jury did not lose its way when it chose to believe his testimony that Mr. Hatfield knowingly punched him in the face for stealing his daughter's video game system. Mr. Hatfield's third assignment of error is overruled regarding his conviction of felonious assault.
 CONCLUSION {¶ 26} Mr. Hatfield was not entitled to an instruction on self-defense because there was insufficient evidence on that issue to permit a reasonable doubt *Page 15 
as to his guilt. He forfeited his right to appeal the denial of his motion for separate trials because he did not renew his motion after the State rested or at the close of all the evidence. In addition, Mr. Hatfield's convictions for receiving stolen property and felonious assault were not against the manifest weight of the evidence. Mr. Hatfield's assignments of error are overruled, and the judgment of the Summit County Common Pleas Court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
 Costs taxed to appellant. *Page 16 
CARR, P. J., BAIRD, J., CONCUR.
(Baird, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to § 6(C), Article IV, Constitution.) *Page 1